CANTRELL & COCHRANE, Limited, v. UNITED BOTTLE CO., Inc.

District Court, S. D. New York.
Feb. 9, 1921.*

*Received for publication Jan. 12, 1933.

Jeffery, Kimball & Eggleston, of New York City (Oscar W. Jeffery, of New York City, of counsel), for complainant.

Gilbert & Gilbert, of New York City (A. S. Gilbert, Francis Gilbert, and Jerome E. Malino, all of New York City, of counsel), for defendant.

AUGUSTUS N. HAND, District Judge.

This is a motion for a preliminary injunction in a suit brought to restrain the infringement of the trade-name and trade-mark "Cantrell & Cochrane." The defendant is sued as a contributory infringer. It is a company which collects and sells bottles. The accusation made against it is that it has obtained secondhand bottles formerly used in the sale of the complainant's ginger ale, and sold these bottles to soft drink manufacturers knowing, or having reason to believe, that the latter would use them to deceive the public, and palm off their goods as the ginger ale of Cantrell & Cochrane. The bottles had the name of Cantrell & Cochrane blown into the glass, near the bottom. Complainant's affidavits show that even if the label of the particular dealer in ginger ale is placed on the bottle, it often comes off when the bottle is put in an ice box or other damp place, and the public will then see only the name Cantrell & Cochrane, and believe that the sarsaparilla, or other soft drink, contained in the bottle was manufactured by the complainant.

The moving papers show that one Meisezahl, president and manager of the Charles Meisezahl Manufacturing Company, makes ginger ale, sarsaparilla, soda water, and other nonalcoholic beverages; not long prior to September 8, 1920, purchased from the defendant a considerable number of secondhand bottles, among which were seventeen gross of the Cantrell & Cochrane bottles. He says that at the time these bottles were delivered by the defendant it was known by the latter that they were to be used for ginger ale and other nonalcoholic beverages, as the Meisezahl Company deals only in those articles. He adds that their premises are equipped with apparatus for that purpose, and their signs and advertisements all state that they are engaged in that business. Meisezahl adds that he requested the defendant to take back the Cantrell & Cochrane bottles, and that on or about November 8, 1920, he returned most of them to the defendant and received from the latter a credit slip dated September 8th. The return on November 8, 1920, is said to have been due to delay on defendant's part. Meisezahl adds in a subsequent affidavit, read on behalf of the defendant, that he does not believe it was the intention of the latter to deliver to him any Cantrell & Cochrane bottles.

Benlow, the manager of the defendant company, in his affidavit submitted in opposition to the motion, states that the defendant did not intend to ship Meisezahl Cantrell & Cochrane bottles. On the other hand, it appears from the affidavit of Coursen H. King, who has charge of the business of the complainant's agents in this country, that the Charles Meisezahl Manufacturing Company have consented to a decree for infringement of complainant's trade-mark and trade-name which was entered on or about December 13, 1920, and that Mr. King's company purchased a Cantrell & Cochrane bottle from Meisezahl containing ginger ale of their manufac-

ture on October 23, 1920, marked herein Plaintiff's Exhibit 3, and that this bottle not only infringed the Cantrell & Cochrane trademark, but also its label. The defendant is therefore found selling a large number of bottles to a soft drink manufacturer, who has admitted infringement by consenting to a decree against him. Whether the infringement was actually perpetrated, as the complainant contends, by means of bottles sold by the defendant, does not seem to me material. The Charles Meisezahl Manufacturing Company is engaged only in the soft drink business, is a proved infringer, and danger of the perpetration of fraud by the sale of bottles indelibly marked with the name of the complainant to one engaged in the same business is too great to justify the sale.

It is apparently true that the intent that the article sold shall be used in an infringing way must be made out. Henry v. A. B. Dick Co., 224 U. S. 1, 48, 32 S. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880; Rupp & Wittgenfeld Co. v. Elliott (C. C. A.) 131 F. at page 730. As Mr. Justice Lurton said in Henry v. A. B. Dick Co., 224 U. S. at page 48, 32 S. Ct. 364, 379, 56 L. Ed. 645, Ann. Cas. 1913D, 880: "Undoubtedly a bare supposition that by a sale of an article which, though adapted to an infringing use, is also adapted to other and lawful uses, is not enough to make the seller a contributory infringer."

But if from the circumstances it is apparent that there is not a "bare supposition," but a reasonable certainty, if, as here, the bottles were sold to a person in the same line of business as the complainant, with no probability and no practical method of obliterating the trade-mark, the court is justified in inferring an intention to infringe from the facts of the case. Mr. Meisezahl swore, in his original affidavit, that the defendant knew that the bottles were to be used for ginger ale and other nonalcoholic beverages. It is not reasonable to suppose that the defendant could have sold seventeen gross of the complainant's bottles to Charles Meisezahl Manufacturing Company without knowing what it was selling. If it knew that it was selling complainant's bottles on which the trade-mark appeared, and that the bottles which it sold were to be used for soft drinks, the intention to infringe is by all reasonable rules of presumption made out, and I accordingly find that such intention existed. The mere fact that the greater part of the bottles were returned to the defendant after the Charles Meisezahl Manufacturing Company had apparently been detected in infringement on October 23, 1920, is too slight evidence that either party to the transaction did not intend an unlawful use of the complainant's bottles.

The affirmative defense is set up that the complainant violated the Sherman Anti-Trust Act (15 USCA § 1 et seq.) by insisting upon purchasing secondhand bottles from a particular set of dealers, and refusing to deal with the defendant except through them. In the first place, I see no reason to believe that an agreement with several dealers in secondhand bottles to buy exclusively from them was a violation of the Sherman Act; but if it was, it is extravagant to assume that the object of this suit is to enforce the agreement between complainant and the dealers in secondhand bottles above mentioned. The bottles may doubtless be used for various things other than ginger ale and soft drinks, and the natural and direct object of the suit is only to prevent deception of the public by unfair use of complainant's bottles. See Coca-Cola Company v. Bennett (C. C. A.) 238 F. 513; Coca-Cola Company v. Deacon Brown Bottling Company (D. C.) 200 F. 105; and Coca-Cola Company v. Nashville Syrup Company (D. C.) 200 F. 153.

The further defense is made that complainant does not come into this court with clean hands because it represents to the public that the contents of its bottles is imported. It may well be doubted whether the mere fact that Cantrell & Cochrane for years have imported their ginger ale would prevent them from making it here under the same formula without warning the public of that fact. They have, however, given due warning by stating the place of manufacture on the tin caps, and also having a most conspicuous label securely glued to the bottles stating where the contents was manufactured. They have also in their circulars and price lists covered the same ground. Inasmuch as the doctrine of "clean hands" is a matter of intention, the scrupulous care with which complainant has avoided any possible charge of misrepresentation renders this last defense wholly unavailable.

The situation of the defendant who has sold complainant's bottles to a manufacturer who used them not merely with a label that might come off, but with a label which has been found to be infringing in itself, is quite different.

The motion for a preliminary injunction is granted.