**BOSTON PROFESSIONAL HOCKEY ASSOCIATION INC. et al.**

v.

**DALLAS CAP & EMBLEM MFG., INC.**

Civ. A. 3–6318–B.

United States District Court,
N. D. Texas,
Dallas Division.

May 15, 1973.

Ernest E. Figari, Jr., of Coke & Coke, Dallas, Tex., for plaintiffs; Conboy, Hewitt, O'Brien & Boardman, Anthony L. Fletcher, New York City, of counsel.

J. Manuel Hoppenstein and William D. Harris, Jr., Dallas, Tex., for defendant.

*Memorandum Opinion and Judgment*

HUGHES, District Judge.

The National Hockey League and thirteen of its member teams have brought this action against Dallas Cap & Emblem Manufacturing, Inc., to enjoin the defendant from making and selling embroidered cloth emblems embodying the plaintiffs' registered trademarks and service marks. The plaintiffs have charged that the defendant's reproduction of their symbols constitutes (1) an infringement of the plaintiffs' registered marks, except for the Toronto team which has no registered mark, in violation of 15 U.S.C. § 1114 (Counts 1 & 2); (2) unfair designation of origin as to all plaintiffs in violation of 15 U.S.C. § 1125 (Counts 3 & 4); and (3) common law unfair competition (Counts 5 & 6). Plaintiffs have sued for injunctive relief and for damages on each claim. The defendant has denied any infringement or deceptive practices and has alleged as a defense that plaintiffs have used their mark in violation of the antitrust laws.

Each hockey team and the league have a symbol which consists of a distinctive pictorial design or motif. The plaintiffs except for Toronto have secured federal registration of their symbols as service marks for rendering ice hockey entertainment services. Vancouver secured a registration after the alleged infringing acts and has sued only for injunctive relief. In addition, the St. Louis Blues and the Minnesota North Stars have registered their symbols as trademarks for certain goods. None of the symbols of plaintiffs have been copyrighted.

The plaintiff teams individually in the past have authorized certain manufac-

turers to use their marks in connection with the distribution and sale of products. Pl'fs' Answer to Interrogatories No. 3, Filed Jan. 11, 1973. The plaintiffs have authorized the National Hockey League Services, Inc. (NHLS) to act as their exclusive licensing agent for their names and symbols. The NHLS has licensed various manufacturers to use the plaintiffs' symbols on merchandise. Among the products so licensed are embroidered cloth emblems and various products upon which manufacturers may place cloth emblems, e. g., knit caps. The NHLS has granted to one manufacturer, Lion Brothers Company, Inc., the exclusive license to make embroidered emblems depicting plaintiffs' symbols. Licensing Agreement, Pl'f Ex. No. 11. No other licensee for the manufacture of embroidered emblems could be authorized during the one year term (1972) of the agreement. Pl'fs' Admission No. 5, Def't Ex. No. 17.

The defendant is in the business of manufacturing and selling embroidered cloth emblems. It has made and sold emblems which are substantial duplications of the plaintiffs' marks without authorization from the NHL or the member teams or the licensing agent. The present action arose from these sales.

Plaintiffs contend in their first cause of action that they have the exclusive right to use their marks in commerce in connection with goods and services covered by their federal registrations. They complain that defendant's reproduction, copying, and imitating of their marks is an infringement as proscribed in Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). The courts interpreting this section have held that "[a] cause of action for trademark infringement exists, . . . where an individual uses a trademark (1) without consent; (2) in connection with the sale of goods; (3) where such use is likely to cause confusion or to deceive purchasers as to. the source or origin of the goods." Franchised Stores of New York, Inc. v. Winter, 394 F.2d 664, 668 (2d Cir. 1968).

The defendant does not dispute that it has produced and marketed emblems which were substantial duplications of plaintiffs' marks without plaintiffs' consent. The disputed element is whether defendant's use created a likelihood of confusion or mistake or deception as to the source of the subject goods or service. See John R. Thompson Co. v. Holloway, 366 F.2d 108, 112 (5th Cir. 1966).

"The primary and proper function of a trademark is to identify the origin or ownership of the article to which is is affixed." Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 412, 36 S.Ct. 357, 360, 60 L.Ed. 713 (1916). In United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918) the Supreme Court stated that a trademark's "function is simply to designate the goods as the product of a particular trader and to protect his goodwill against the sale of another's product as his . . . ." 248 U.S. at 97, 39 S.Ct. at 51.

■ Registration of a trade-mark does not preclude all copying of the mark. "It is not a copyright . . . A trademark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his." Prestonettes, Inc. v. Coty, 264 U.S. 359, 368, 44 S. Ct. 350, 351, 68 L.Ed. 731 (1924). The Supreme Court has declared that absent a copyright or design patent or "other federal statutory protection" an article may be copied or duplicated by competitors. Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 238, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964).

■ The plaintiffs have urged that their federal registrations create a statutory protection against the copying of their marks by the defendant. This, however, is not the case. The test is not whether the products in question are duplications of their marks, but whether the defendant's use of the mark would

mislead the public as to the source of the goods.

The determination of whether confusion, mistake or deception as to the source or origin of the emblems is likely to arise from the defendant's use is a question of fact. The court must decide whether or not a prospective purchaser is likely to conclude that the cloth emblems emanate from the mark owners, that is, have a common origin. The evidence fails to reflect any confusion.

The plaintiffs are recognized primarily as organizations which produce ice hockey entertainment. They have not shown that their reputation extends to the ornamental use of embroidered emblems. Even in the case of the St. Louis and Minnesota trademarks, the evidence reveals that the St. Louis trademark application was initially rejected because the mark was considered an ornamentation and not a designation of source. Def'ts Ex. No. 18. There is no testimony that a purchaser of an emblem of defendant was deceived into believing he was purchasing a team emblem. Defendant's emblems are sold merely as ornamental decoration and there is no evidence that they were not purchased for that purpose.

It is significant to note that none of the alleged infringing emblems bears any designation of the name of the city which the team represents. They merely consist of copies with significant differences of team symbols. They are clearly distinguishable.

In marketing its emblems, the defendant has not attempted to palm them off as originating from the plaintiffs, nor to trade on the name of the individual mark owners. Moreover, plaintiffs have failed to show that the defendant's marketing and use of the imitated emblems has resulted in any impairment to either plaintiffs' marks or to its primary business—hockey. After considering all the evidence adduced at trial, this court must conclude that the evidence does not suggest that the public would be confused, misled or deceived about the source of the respective emblems. The plaintiffs, therefore, have failed to establish this essential criterion under § 1114 of the act.

A further consideration in connection with plaintiffs' first cause of action is whether the plaintiffs' use of the team symbols in connection with the embroidered cloth emblems is a "trademark use" which would bring it within the ambit of the rights and protection of the Lanham Act.

A "trademark" use of a design arises when the value of the feature is limited to creating a demand for the goods because it is associated with a particular source. The feature then is exclusively a marketing tool and is characterized as non-functional. When the distinctive motifs create a demand for goods because of the design and the goods have no substantial value without the design, the use of the design is considered to be a non-trademark use and the design feature becomes functional.

In Pagliero v. Wallace China Co., 198 F.2d 339 (9th Cir. 1952) the plaintiff attempted to enjoin the use of a design placed on a china plate. Relief was refused because the design was not copyrighted, and when used on the china did not perform a trademark purpose:

"Where the features are 'functional' there is normally no right to relief. 'Functional' in this sense might be said to connote other than a trademark purpose. If the particular feature is an important ingredient in the commercial success of the product, the interest in free competition permits its imitation in the absence of a patent or copyright . . . [O]ne of the essential selling features of hotel china, if, indeed, not the primary, is the design. The attractiveness and eye-appeal of the design sells the china." 198 F.2d at 343–344.

The Supreme Court's decisions in Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct.

**464**

779, 11 L.Ed.2d 669 (1964) raised the issue about the protection afforded to designs for which the creator has secured neither a design patent nor a copyright. One commentator has propounded the following statement of the law as a result of these decisions:

"An unpatented or uncopyrighted article may be freely copies in all its functional elements and the first user cannot claim secondary meaning for any such functional feature. Nor can he lay claim to exclusivity of use thereof on the theory that he expended substantial monies in building his business based thereon. The right to imitate cannot, however, be exercised in a manner that would deceive the public concerning the origin of the goods. If on the other hand, an unpatented or uncopyrighted design, which is a non-functional element of an article, is either distinctive as a designation of origin or has otherwise obtained secondary meaning its registration as a trademark under the Lanham Act will entitle it to protection against imitation." 3 Callman, Unfair Competition, Trademarks and Monopolies § 77.4(5) (3d ed. 1969).

■ The designs of the plaintiffs' symbol can be characterized as functional because these have become "an important ingredient in the commercial success of the product." Pagliero v. Wallace China Co., 198 F.2d at 343. When an artistic rendition creates a demand in the market which is unrelated to its feature as an indicia of source, the law will not afford that design protection under the trademark laws. In the instant case, the registered trademark is, in effect, the product itself. The marks have achieved intrinsic value to a segment of the consuming public which may be attracted to their aesthetic features and to their characteristics as a patch to be used on apparel or for collecting. See, e. g. Pl'fs' Ex. No. 12.

In this area of the economy the protection of the trademark law must give way to the public policy favoring free competition.

To hold that plaintiffs can prohibit the imitation of the team symbols because of the trademark registration would be to grant to the mark owners protection which is tantamount to a copyright monopoly. Plaintiffs therefore have no right to relief under the Lanham Act against the defendant's copying and selling emblems denoting their team symbols.

■ The plaintiffs' second cause of action is for false designation of the origin of the subject goods, or for a false description by means of symbols tending falsely to describe the goods in violation of 15 U.S.C. § 1125. This claim is not supported in view of the court's findings that there is no likelihood of confusion as to the source of the emblems and that the marks do not serve as a designation of the origin of the emblems. See Girl Scouts v. Personality Posters Mfg. Co., 304 F.Supp. 1228, 1231 (S.D.N.Y.1969). Moreover, the evidence fails to establish that the defendant has made any false representations concerning the origin of the emblems in the packaging or marketing of its competing emblems. Nor does the evidence show that the defendant has purported to sell its emblems under the guise of being the official emblem or of having been authorized by the plaintiffs so that one may infer the origin in the plaintiffs. The court, therefore, concludes that the plaintiffs have failed to sustain the action set out in Counts 3 and 4 against the defendant.

■ The plaintiffs' third cause of action alleges that the defendant's use of their mark constitutes unfair competition. While this court has decided that there is no likelihood of confusion as to the source of the subject emblems to merit a finding of trademark infringement, the court in applying the rules of equity in this count must decide whether the defendant's imitation of plaintiffs' marks is calculated to deceive or mislead the public.

In determining the issue of trademark infringement, the court further found that the defendant had not directly

"palmed off" its emblems as those of plaintiffs and had not endeavored to trade on the reputation of the plaintiffs as a source of emblems. Moreover, the plaintiffs have not shown that the defendant's action has caused them any damage to their business or marks up to this time.

Although there is no technical infringement under the trademark laws, the law of the unfair competition covers the broader question of prevention of injury to the plaintiffs' business. Here, the defendant's use has the prospect of trading on the competitive advantage the mark originator has to the public which desires the "official" product.

■ Although the defendant may have the right to copy the symbols of the plaintiffs, the imitator has an additional burden to "take reasonable steps to inform the prospective purchasers that the goods which he markets are not those of the other." Restatement of the Law of Torts § 741(b)(ii) (1938); *see* Intricate Metal Products, Inc. v. Schneider, 324 F.2d 555, 562 n. 3 (9th Cir. 1963). In the interest of fair commercial dealing, the public has the right to have the source of competing goods clearly distinguished when the origin may have an impact on the value of the goods. In this instance, the designation of the defendant's emblem to indicate that it is not official would establish that it has no connection with the plaintiffs' symbols. The designation of origin in this way is, of course, an intangible feature, but it is one which bears directly on the good will of the mark owner.

■ This court recognizes that it has substantial latitude in fashioning an equity decree. "The essence of equity jurisdiction has been the power of [the trial court] to do equity and to mould each decree to the necessities of the particular case." Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944). The defendant in its argument and brief has suggested that the court could require "that defendant affix a label to the back of the emblems

stating 'not authorized by National Hockey League or its members.'" Def't's Tr. Br. p. 16. Such a notice would serve to distinguish the source of the goods and to protect plaintiffs' good will. Similar forms of notice have been approved as means to inform the public that the competing mark has no connection with a trademark owner. Smith v. Chanel, Inc., 402 F.2d 562 (9th Cir. 1968); Societe Comptoir v. Alexander's Department Stores, Inc., 299 F.2d 33 (2d Cir. 1962). The defendant, therefore, should be enjoined from continuing to manufacture and sell emblems depicting plaintiffs' marks without appropriate disclaimers of authorization and/or conspicuous designations of source. Such notice should be placed either on the article or on the packaging. This remedy serves the interests of the public by preserving competition in the product while eliminating any unfair appropriation of plaintiffs' good will as originators.

■ As a defense to the trademark infringement charges, the defendant has alleged that plaintiffs have used their marks in a scheme to violate the antitrust laws. The defendant has raised the antitrust violation only in the context of a defense to trademark infringement rather than as a counter-claim for damages or other relief. When considered in this context, the defense affects the plaintiffs' claim to an incontestable right to use the mark and the claim to certain statutory presumptions. Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena, 298 F.Supp. 1309 (S.D.N.Y.1969), modified on other grounds, 433 F.2d 686 (2d Cir. 1970), cert. denied, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971).

■ Since this court has found that there has been no trademark infringement, a determination of the merits of the antitrust defense as it applies to this claim would be superfluous. However, there remains the question of the applicability of the antitrust claim as a defense to the charges of common law un-

fair competition. The court has held that the actions of the defendant constitute unfair competition for which injunctive relief should be granted. It is recognized, however, that courts of equity will not grant injunctive relief to a party who comes into court with "unclean hands." *See* Lee v. Reynolds, 137 U.S.P.Q. 41 (N.D.Tex.1962), aff'd, 313 F.2d 638 (5th Cir. 1963). The doctrine of unclean hands is a defense to a claim for injunctive relief in an unfair competition case, and the courts have concluded that antitrust violations may constitute unclean hands. Phi Delta Theta Fraternity v. J. S. Buchroeder & Co., 251 F.Supp. 968 (W.D.Mo.1966). In the present action, the defense of unclean hands arising from the antitrust violation concerns the very rights which the plaintiffs have invoked this court to protect. The issue then is whether the defendant can establish that plaintiffs have used their trademark to violate the antitrust laws.

The defendant has alleged that the plaintiffs have conspired to violate Sections 1 and 2 of the Sherman Act.

The first ground for the violation involves a claim that plaintiffs have restrained trade through contracts which amount to tying agreements. The defendant charges that the joint licensing agreement between National Hockey League Services and Lion Bros. constitutes an illegal tying arrangement. The alleged scheme is an arrangement of tying the grant of the exclusive license for a product, e. g. a cap, to a requirement that one of the components, e. g. an emblem, be purchased from an exclusive, authorized source.

■■■■ The plaintiffs have denied that there is any tying arrangement in their contracts, but have stated that the contracts are exclusive dealing arrangements which are legal. The evidence supports the finding that the contracts constitute valid exclusive dealing contracts rather than tying arrangements. While the agreement states that Lion Bros. is the exclusive dealer, and that it will sell exclusively to licensees, there is no evidence that the other licensees for products may not turn to manufacturers other than Lion Bros. for their emblems. On the contrary, the testimony of the president of the licensing agent reveals that it would consider requests of licensee-suppliers who wished to purchase items from non-authorized sources. (Ruck Deposition pp. 28, 30–32; Def't's Exhibit 10; See Pl'fs' Reply to Request for Admissions, Def't's Ex. No. 17, Replies Nos. 15, 20, 27, 28). When there are competing suppliers of goods from whom a licensee may purchase, the exclusive dealing agreements are valid. *See* Packard Motor Car Co. v. Webster Motor Car Co., 100 U.S.App.D.C. 161, 243 F.2d 418, 420 (1957).

■■■■ The defendant has also failed to adduce any evidence that the alleged tying agreement has curtailed competition in the market in which defendant competes. The defendant has the burden of showing that the contract has acted to restrain trade and limit competition. The defendant has also failed to show that the contract would tend to produce a monopoly in the relevant market of embroidered emblems. Each of these facts is essential to establishing a claim of antitrust violation. Standard Oil Co. of California v. United States, 337 U.S. 293, 298–299, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949); Warriner Hermetics, Inc. v. Copeland Refrigeration Corp., 463 F.2d 1002 (5th Cir. 1972).

■■■■ This court's prior holding that the defendant's manufacturing and sale of the plaintiffs' symbols does not constitute a trademark infringement conclusively establishes that there is no violation of the antitrust laws. The alleged monopoly power of the plaintiffs in their trademark has been effectively limited in the market of embroidered emblems. The plaintiffs have no power to control the market in the allegedly "tied" product—the emblems. Albert H. Cayne Equip. Corp. v. Union Asbestos & Rubber Co., 220 F.Supp. 784, 788 (S.D. N.Y.1963).

The defendant's second and third contentions of violations concern the charge of joint action and a group boycott by the plaintiffs and their licensees to restrain trade in the emblem market. Defendant argues that plaintiffs have engaged in joint action to prohibit the sale of emblems by the licensed manufacturer to any customer other than those approved by plaintiffs. In addition, defendant contends that through the granting to one exclusive licensee for each product the plaintiffs have created a group boycott against competing manufacturers. A review of the evidence, however, indicates that defendant's proof of these claims is wholly deficient.

Although the plaintiffs admit that no licensee has secured emblems from any source other than Lion Brothers, this alone is not a course of conduct which is violative of the antitrust laws. The uncontroverted evidence in this case reflects that plaintiffs do not limit the manufacture or sale of trademark items to their respective licensee. Def't's Ex. No. 10, Ruck Dep. pp. 21, 28. The plaintiffs have stated that they are always open to approving the use of emblems from other manufacturers when the licensee does not or cannot produce a competitive product. Ruck Dep. p. 28. Plaintiffs admit that there has not been an instance when a non-licensed emblem manufacturer has been approved for supplying emblems to licensee or other purchasers, but they deny that this fact is a result of a conspiracy to restrain or eliminate trade. See Def't's Ex. No. 17, Replies Nos. 15, 20 & 28. The plaintiffs have stated that the reason no other emblem manufacturer has been approved for licensee use or other sales is not because there is a prohibition against this activity but rather because there has been no request or inquiry for approval. Def't's Ex. No. 17, Replies Nos. 15, 20 & 28; Ruck Dep. p. 33.

The defendant has failed to adduce any evidence of a conspiracy among the plaintiffs to refuse to deal with defendant. Furthermore, the defendant has failed to produce any evidence of a conspiracy among the plaintiffs and their licensees to boycott defendant's goods or other manufacturer's goods. The paucity of evidence introduced by the defendant fails to create any preponderance which could support the conclusion that plaintiffs have violated the antitrust laws.

The plaintiffs have stated that their control over their licensees, including the manufacturer of the emblems is for the purpose of insuring the quality of those goods which are sold with their authorization. There has been no evidence to controvert the statements of plaintiffs that there was no conspiracy or agreement among plaintiffs to exclude defendants or any other competitor from bidding for the business of a licensee by providing goods of the quality required by plaintiffs.

Although defendant has charged that the alleged illegal conduct represented per se violations of the antitrust laws which obviates proof of anticompetitive effects, this court notes that there has been no evidence that the actions of the plaintiffs have created any restraint of trade against the defendant or in the relevant market. The plaintiffs' licensing agreements do not involve an exercise of any monopoly power over the emblem market or any other licensee market.

For its fourth ground of antitrust violation, the defendant has raised a novel charge in alleging that the plaintiffs' use of a uniform royalty for the licensed goods using each team symbol constitutes a per se price-fixing violation. It is clear under the facts of this case that the plaintiffs have merely asked for a uniform rate of return from the sale of licensed goods. There is no evidence that plaintiffs or any of their licensees have conspired among them-

selves or with others to fix the price of certain goods. When one considers the way in which the market functions, the court must conclude that the method by which the plaintiffs license their marks is reasonable and may be said to facilitate commerce rather to restrain it. The defendants have failed to prove that there has been any combination to fix prices or royalties on the subject goods which had the effect of restraining commerce.

Having heard the evidence adduced at trial, the arguments and briefs of the parties and having considered all these matters and for all the reasons hereinabove stated it is hereby

Ordered, Adjudged and Decreed that the plaintiffs' prayer for injunctive relief and for damages under the claim of trademark infringement as stated in Counts I and II of the complaint is in all things denied; and it is further

Ordered, Adjudged and Decreed that the plaintiffs' prayer for injunctive relief and for damages under the claim of false designation of origin as stated in Counts III and IV of the complaint is in all things denied; and it is further

Ordered, Adjudged and Decreed that the plaintiffs' prayer for injunctive relief as stated in Count V for unfair competition is hereby granted and the defendant is hereby enjoined from selling any embroidered or cloth emblems which substantially depict the plaintiffs' symbols which have been registered as service marks or trademarks with the United States Patent Office without appropriate disclaimers as suggested hereinabove that the said emblems are not authorized or have not emanated from the plaintiffs unless otherwise agreed by the parties; and it is further

Ordered, Adjudged and Decreed that the plaintiffs' prayer for damages under Count VI of the complaint is denied; and it is further

Ordered, Adjudged and Decreed that the defendant's defense of antitrust violations is hereby stricken and denied.

Each party to bear his own costs.