**The COCA–COLA COMPANY, a corporation, Plaintiff,**

v.

**HOWARD JOHNSON COMPANY, a corporation, doing business as Howard Johnson's, Defendant.**

**Civ. A. No. C 74–870 A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 15, 1974.

---

Charles L. Gowen, John C. Staton, Jr., King & Spalding, Julius R. Lunsford, Jr., James W. Young, III, Atlanta, Ga., for plaintiff.

Earle C. Cooley, Blair L. Perry, Hale & Dorr, Boston, Mass., Ben L. Weinberg, Jr., Long, Weinberg, Ansley & Wheeler, Atlanta, Ga., for defendant.

### ORDER

JAMES C. HILL, District Judge.

This is an action for trademark infringement and unfair competition. Plaintiff, a manufacturer of soft drink syrup and beverage made therefrom, asserts that it is the registered holder of the trademarks "Coca-Cola" and "Coke." These trademarks, allege plaintiff, symbolize a valuable good will. Plaintiff further alleges defendant, a corporation which operates restaurants, has infringed these trademarks and engaged in unfair competition by serving a beverage not produced by plaintiff or its licensees to customers who order Coca-Cola or Coke.

In its answer defendant asserted nine defenses and two counterclaims. Of present concern to the Court is plaintiff's motion to strike six of the defenses (the Second, Third, Fifth, Sixth, Seventh and Eighth) on the ground that they are insufficient as a matter of law. Plaintiff has also moved for dismissal of defendant's first counterclaim on the ground that no claim is stated.

Fed.R.Civ.P. 12(f) provides that any insufficient defense may be stricken. Motions to strike are not favored by the courts. Great Northern Paper Co. v. Babcock & Wilcox Co., 46 F.R.D. 67, 69 (N.D.Ga.1968); Giraud v. Teamsters, Chauffeurs, Ware. & Help.,

Local 901, 46 F.R.D. 5, 6 (D.P.R.1969). A successful motion requires that the insufficiency of the defense be clearly apparent. Carter-Wallace, Inc. v. Riverton Laboratories, Inc., 47 F.R.D. 366, 367–368 (S.D.N.Y.1969). It has also been said that a motion to strike should be granted "only when the pleading to be stricken has no possible relationship to the controversy." Augustus v. Board of Public Instruction, 306 F.2d 862, 868 (5th Cir. 1962). Furthermore, unless there is a showing of prejudicial harm to the movant, the courts are reluctant to determine disputed and substantial questions of law on a motion to strike. *Augustus, supra. Also see* Gilbert v. Eli Lilly & Co. Inc., 56 F.R.D. 116, 120–121 (D.P.R.1972). Finally, district courts have broad discretion in disposing of motions to strike. Smith, Kline & French Laboratories v. A. H. Robins Co., 61 F.R.D. 24, 34 (E.D.Pa.1973).

### *The Second Defense.*

Defendant's second defense is that plaintiff is barred from relief in whole or in part by applicable statute or statutes of limitations. Plaintiff contends the defense should be stricken because trademark infringement and unfair competition are continuous torts, and hence a fresh cause of action arises so long as the wrong continues.

Since there is no federal statute of limitations for a trademark infringement action, the applicable statute of limitations is determined by looking to the law of the forum state. McGuire v. Baker, 421 F.2d 895, 898 (5th Cir. 1970); Local Trademarks v. Price, 170 F.2d 715, 717 (5th Cir. 1948). Neither party has, however, pointed to a Georgia statute of limitations that should apply to this case. Since the parties have not addressed the issue, the Court will not make a ruling as to what statute applies. It is sufficient at this time simply to deny plaintiff's motion to strike the defense. Presently, since no time is stated with respect to the alleged infringement and no statute of limitations period is put forth as applicable, the Court would

be required to hypothesize various possible situations and announce various results. In the interest of economy of judicial time, it is better to deny the motion addressed to the pleadings and await the development, at least, of contentions and, hopefully, of facts.

### The Third Defense.

Defendant's third defense is that plaintiff is barred in whole or in part by laches. Plaintiff contends the defense should be stricken because laches is not a defense to a prayer for injunctive relief.[1]

Plaintiff cites Blue Bell, Inc. v. Ruesman, 335 F.Supp. 236, 237 (N.D. Ga.1971), and Youthform Company v. R. H. Macy & Co., 153 F.Supp. 87, 95 (N. D.Ga.1957), as standing for the proposition that laches is never a defense to a request for an injunction. The Court does not read these cases as standing for that proposition as an iron-clad rule.[2] The Court views the cases as stating the principle contended for by plaintiff as being generally, but not always, true. The Blue Bell case cited Youthform as authority, and Youthform cited Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526 (1888). The Court does not, however, read Menendez as holding that laches may never be a defense to an action for injunction. The Court did say in Menendez, supra, 128 U.S. at 523, 9 S.Ct. 143, that in some circumstances delay might bar an accounting for profits, but not an injunction. However, mere delay is not synonymous with laches. See Carl Zeiss Stiftung v. VEB Carl Zeiss Jena, 433 F.2d 686, 704 (2nd Cir.

1970), cert. denied, 403 U.S. 905, 91 S. Ct. 2205, 29 L.Ed.2d 680 (1971). Laches is a defense which appeals to the conscience of the Chancellor to invoke his soundest and wariest discretion and its purpose is to prevent the prosecution of claims which have gone stale. Davidson v. Grady, 105 F.2d 405, 408 (5th Cir. 1939). Whether laches bars an action depends on the circumstances of the particular case and is a question addressed to the discretion of the trial court. Burnett v. New York Central Railroad Company, 380 U.S. 424, 435, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). Unlike Blue Bell (summary judgment motion) and Youthform (after trial), the facts of the case now before the Court have not been developed. The Court, accordingly, declines to strike the defense on the present pleadings.

### The Fifth Defense.

Defendant's fifth defense is an antitrust misuse of trademark defense. Defendant alleges that plaintiff has misused the trademarks "Coke" and "Coca-Cola" in violating the antitrust laws and that such misconduct by plaintiff bars equitable relief under the doctrine of "unclean hands." The specific violation of the antitrust laws about which defendant complains is the imposition, by plaintiff, of territorial resale restrictions upon licensed users of the trademarks. Plaintiff is not such a licensee.

To determine the sufficiency of this defense, the Court must consider the fairly well established criteria of the "unclean hands" doctrine; the effect of 15 U.S.C. Sec. 1115(b)(7) [3]; and several

---

1. Plaintiff has waived any claim to an accounting or the recovery of damages; plaintiff does, however, seek costs and attorneys' fees.

2. Indeed, the defense of laches has been held to bar injunctive relief in trademark infringement and unfair competition cases. See, e. g., Borg-Warner Corporation v. York-Shipley, Inc., 293 F.2d 88, 94 (7th Cir. 1961), cert. denied, 368 U.S. 939, 82 S.Ct. 381, 7 L.Ed.2d 338 (1961); Seven-Up Company v. O-So-Grape Co., 283 F.2d 103, 106

(7th Cir. 1960), cert. denied, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859 (1961).

3. Title 15 U.S.C. Sec. 1115(b)(7) states:
 "If the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the affidavit filed under the provisions of said section 1065 subject to any conditions or limita-

well reasoned decisions and opinions touching upon antitrust defenses in trademark infringement cases.

Two cases illustrate the opposite results which have been reached when antitrust defenses have been proffered to trademark infringement cases. What appears to be the majority view is ably presented in Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena, 298 F.Supp. 1309 (S.D.N.Y.1969), modified on other grounds, 433 F.2d 686 (2nd Cir. 1970), cert. denied, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971). In that case, Judge Mansfield viewed Sec. 1115(b)(7) as not mandating an antitrust misuse defense. He said at 298 F.Supp. 1311–1312:

"Both the express language of Sec. 33(b)(7) of the Lanham Act and its legislative history reveal strong support for plaintiffs' contention that the intent and effect of the Act is merely to make the defense of antitrust misuse available to defeat the conclusive evidentiary force that would otherwise attach to a trademark certificate under the Act."

 Judge Mansfield felt that a court could, in the exercise of its equitable powers, deny the enforcement of a trademark to one who has used the trademark, itself, as the vehicle of unlawful antitrust activities. Such a defense should be rejected, however, where it asserts collateral antitrust activities with respect to the goods bearing the trademark as opposed to the use of the trademark, itself, as the prime and effective instrument to effectuate the antitrust activity. The following cases are examples of rejection of the defense based upon such "collateral activities with respect to goods bearing the trademark." O. & W. Thum Co. v. Dickinson, 245 F. 609, 622–623 (6th Cir. 1917), cert. denied, 246 U.S. 664, 38 S.Ct. 334, 62 L.Ed. 928 (1918); Searchlight Gas

Co. v. Prest-O-Lite Co., 215 F. 692, 697 (7th Cir. 1914); Prest-O-Lite Co. v. Davis, 215 F. 349, 351 (6th Cir. 1914); Coca Cola Co. v. Gay-Ola Co., 200 F. 720, 726 (6th Cir. 1912), cert. denied, 229 U. S. 613, 33 S.Ct. 773, 57 L.Ed. 1352 (1913); Forstmann Woolen Co., v. Murray Sices Corporation, 10 F.R.D. 367, 370 (S.D.N.Y.1950); Cantrell & Cochrane v. United Bottle Co., 2 F.Supp. 22, 24 (S.D.N.Y.1921); Coca-Cola Co. v. Deacon Brown Bottling Co., 200 F. 105 (N.D.Ala.1912); Weyman-Burton Co. v. Old Indian Snuff Mills, 197 F. 1015 (S. D.N.Y.1912); Independent Baking Powder Co., v. Boorman, 130 F. 726 (D.N.J. 1904).

 Indeed, it might be stated, as a general rule, that an antitrust defense is insufficient in a trademark infringement case. However, that cannot be stated as an ironclad proposition, for we have the equally well reasoned opinion of Judge Oliver in Phi Delta Theta Fraternity v. J. A. Buchroeder & Company, 251 F.Supp. 968 (W.D.Mo.1966). The complex arrangement there denounced appears in the report. Suffice it to say that restraints were placed upon commerce in jewelry, bearing the crests and arms of fraternal orders, and the fraternities had obtained trademark registration of those insignias. Trademark infringement actions by the registered owners were met by antitrust defenses and found to be sufficient.

In *Phi Delta Theta*, Judge Oliver buttressed his conclusion by a somewhat more sweeping application of 15 U.S.C. Sec. 1115(b)(7) than found appropriate by Judge Mansfield in *Stiftung, supra*. However, in each case, the antitrust defense was measured, as to sufficiency, by application of the "clean hands" doctrine (*Phi Delta Theta*, 251 F.Supp. at 977–979; *Stiftung*, 298 F.Supp. at 1314–1315). The essential found present in the one and absent in the other was the

tions stated therein except when one of the following defenses or defects is established: * * * (7) That the mark has been or is being used to violate the antitrust laws of the United States."

Section 1115(b)(7) was enacted as Section 33(b)(7) of the Lanham Trademark Act, 15 U.S.C. Sec. 1051 et seq.

misuse of the mark, itself, as the instrument to effectuate the antitrust activity as opposed to collateral misdeeds concerning the goods bearing the trademark.

The cases are quite reconcilable. To do so, we must consider a line of cases which, while having some surface similarity, are quite different from trademark cases.

The misuse of patents resulting in restraints upon commerce may readily provide a meritorious antitrust defense to patent infringement suits. Morton Salt Co v. G. S. Suppinger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942); Compton v. Metal Products, Inc., 453 F. 2d 38 (4th Cir. 1971), cert. denied, 406 U.S. 968, 92 S.Ct. 2414, 32 L.Ed.2d 667 (1972); Hensley Equipment Co. v. Esco Corporation, 383 F.2d 252 (5th Cir. 1967), modified, 386 F.2d 442 (1967).

However, patents are far different creatures than trademarks. Indeed, the grant of a patent is, in itself, the grant of a monopoly. Were it not made lawful by Congress, such an arrangement would be an antitrust violation in and of itself. The grant of a trademark, on the other hand, does not give the holder the exclusive right to manufacture and sell any particular article, process, or service. Others may market the same or similar goods under their own mark or under no identifying mark at all. The trademark identifies the product as being the product of the holder of that registration, and that's all that it implies. Thus, when the exceptional monopoly granted the holder of a patent is involved in

commercial restraints, the patent, itself, is usually the vehicle of violation. It is not surprising that antitrust defenses are often found and approved in patent cases, for seldom is the hand-soiling combination collateral to the patent.

Now in *Phi Delta Theta, supra,* Judge Oliver had before him a most unusual, but classic, case of a trademark being used directly in restraint of commerce. The insignia was registered as a trademark, and the insignia was the important item being bought and sold in the marketplace. The trademark endowed costume jewelry with its intrinsic value. To all intents and purposes, the grant of trademark registration of the insignia resulted in a monopoly of the product just as if it had been patented.

The defense offered in the case sub judice does not assert that purchasers of the beverage are seeking to adorn their homes, offices or bodies with the physical manifestations of the trademarks Coca-Cola or Coke. Were it so, the superb reasoning of *Phi Delta Theta* would be persuasive.

For the present case, it suffices to rule that an "unclean hands" defense, whether arising from a violation of the antitrust laws or some other laws, can be utilized in a trademark infringement and unfair competition case.[4] It remains to be determined, however, the relationship that must be found to exist between the trademark holder's misconduct and the claim the trademark holder is asserting.

At the outset the Court rejects a reductionist logic answer to the ques-

4. Without giving the thoroughness of consideration as did Judges Oliver and Mansfield, other courts have recognized the "unclean hands" defense in trademark infringement and unfair competition cases. *See, e. g.,* Drop Dead Co. v. S. C. Johnson & Son, Inc., 326 F.2d 87, 95–96 (9th Cir. 1963), cert. denied, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 177 (1964); Boston Pro Hockey Ass'n. Inc. v. Dallas Cap & E. Mfg., Inc., 360 F.Supp. 459, 465–466 (N.D.Tex.1973); Federal Fold-Wall Corp. v. National Fold. Wall Corp., 340 F.Supp. 141, 145–146 (S.D.N.Y. 1971); W. E. Bassett Company v. Revlon, Inc., 305 F.Supp. 581, 589 (S.D.N.Y.1969), rev'd. on other grounds, 435 F.2d 656 (2nd Cir. 1970); Clairol Incorporated v. Gillette Company, 270 F.Supp. 371, 379–380 (E.D. N.Y.1967); Sanitized, Inc. v. S. C. Johnson & Son, Inc., 23 F.R.D. 230, 232 (S.D.N.Y. 1959); G. D. Searle & Co. v. Inst. Drug Distributors, 151 F.Supp. 715, 720–721 (S. D.Cal.1957); Forstmann Woolen Co. v. Alexander's Dept. Stores, 11 F.R.D. 405, 406–407 (S.D.N.Y.1951); Forstmann Woolen Co. v. Murray Sices Corporation, 10 F.R.D. 367, 370 (S.D.N.Y.1950).

tion. Merely because a plaintiff has violated the antitrust laws, or any other laws, in some matter completely unrelated to the case before the Court does not result in "unclean hands" on plaintiff's part. There must be some logical connection between the right plaintiff asserts and the activity constituting unclean hands. Otherwise, the courts must be willing to serve as a battleground for extensive antitrust litigation whenever a trademark holder seeks any, totally unrelated, equitable relief.

 This Court is convinced that the traditional principles of equity provide the guide to determine the relationship that must exist between the right asserted and the "unclean activity."[5] The longstanding rule in equity is that there must be an immediate and necessary relationship between the relief the plaintiff seeks and the conduct giving rise to the "unclean hands." Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293 (1933). Phrased otherwise, the Court must view the right the plaintiff is seeking to vindicate and determine if it is equitable to grant the relief in light of the plaintiff's misconduct. Furthermore, it should not be forgotten that the "[c]ourts are concerned primarily with their own integrity in the application of the clean hands maxim . . .". Gaudiosi v. Mellon, 269 F.2d 873, 881 (3rd Cir. 1959). The Court's integrity is compromised if its grant of relief to a party necessarily implies its approval of unlawful conduct by that party. But equitable remedies are available to persons and firms, clearly entitled to such relief, though they may be guilty of misdeeds not necessarily approved in the grant of injunctions, foreclosures, reformation of instruments, etc. See Republic Molding Corporation v. B. W. Photo Utilities, 319

F.2d 347, 349 (9th Cir. 1963); W. E. Bassett Company v. Revlon, Inc., 305 F. Supp. 581, 589 (S.D.N.Y.1969), rev'd on other grounds, 435 F.2d 656 (2nd Cir. 1970); Revlon, Inc. v. Regal Pharmacy, Inc., 29 F.R.D. 169, 177 (E.D.Mich. 1961).

 The task remaining is to apply the foregoing principles to the present case. Plaintiff is seeking in this action to protect its trademarks, "Coke" and "Coca-Cola." Defendant is alleged to be passing off soft drinks of another's manufacture to customers ordering "Coke" or "Coca-Cola." The misconduct with which plaintiff is charged is the imposition of territorial resale restrictions upon trademark licensees not parties here. The Court does not find there is an "immediate and necessary relationship" between the claim plaintiff is asserting and the misconduct upon which defendant seeks to ground an "unclean hands" defense.

Assuming plaintiff imposes territorial resale restrictions upon trademark licensees and assuming such acts constitute a violation of the antitrust laws, such misconduct does not, except in the remotest sense, affect the equities between the parties in relation to the subject matter of the case at bar. It is true plaintiff's trademarks would be utilized in some measure in the antitrust violation. Defendant, however, would not be affected by the illegal conduct any more than anyone else. More pertinently, the Court, in deciding the issues raised by the complaint, does not approve or denounce the alleged antitrust activity. To bring the purported antitrust violation into the action would obfuscate the issues and convert a relatively straightforward trademark infringement case into a complex antitrust case. The

---

5. Not surprisingly, 15 U.S.C. Sec. 1116 states in part:

"The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunc-

tions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent Office. . . ."

Court thinks defendant's fifth defense is clearly insufficient.[6]

### The Sixth Defense.

Defendant's sixth defense is also an antitrust misuse of trademark defense. Defendant alleges that a substantial number of persons licensed to use plaintiff's trademarks to identify syrups and carbonated beverages made therefrom were granted the licenses upon the condition that they purchase all supplies of such syrups from plaintiff.

As with the fifth defense, the Court does not think plaintiff's alleged misconduct is sufficiently related to the equities of the matter now before the Court. Plaintiff is not seeking to require defendant to purchase any syrup. The defense directs attention away from the matter at hand. The asserted illegality of plaintiff's conduct should not preclude plaintiff from obtaining relief in this action.

The sixth defense, the Court thinks, is clearly insufficient.

### The Seventh Defense.

Defendant's seventh defense is another "unclean hands" defense. In this defense the alleged misconduct, which is also the basis for defendant's first counterclaim, is an antitrust violation and unfair competition. Defendant asserts plaintiff has engaged in an expensive advertising campaign in an effort to gain monopoly power in interstate commerce in cola-flavored carbonated beverages.

As with defenses five and six, the Court concludes that the alleged illegal conduct is only remotely related to the equities in the instant litigation. The Court declines to muddy the waters with this unrelated alleged misconduct. The defense should be stricken.

### The Eighth Defense.

Defendant's eighth defense is that, if any person employed by defendant has passed-off a beverage of another's manufacture upon orders for "Coke" or "Coca-Cola," the persons did so without defendant's authorization and in violation of defendant's instructions. Defendant states this defense goes to the question of relief.

Since plaintiff has waived any claim to damages, the Court need not concern itself with the applicability of this defense to a claim for an accounting and profits. Defendant does argue, however, that this defense is available on the question of injunctive relief. It is, says defendant, because isolated and unpremeditated acts constituting infringement will not support a prayer for injunctive relief.

 Even if there is lack of proof of substantial damages in a trademark case, a court may grant injunctive relief. McCormick & Co. v. B. Manischewitz Co., 206 F.2d 744, 747–748 (6th Cir. 1953). Thus, when the question concerns the propriety of injunctive relief, the focus is not upon the amount of damage. Rather, the key is whether injunctive relief is necessary as a matter of equity to relieve against threatened further infringements. Menendez v. Saks and Company, 485 F.2d 1355, 1375 (2nd Cir. 1973), cert. granted, 416 U.S.

6. Since preparing the above section of this opinion, the recent case of Response of Carolina v. Leasco Response Incorporated, 498 F.2d 314 (5th Cir. 1974) has come to our attention. Though not involving alleged trademark infringement and, thus, factually different, it appears philosophically similar to the case under consideration. We consider antitrust defenses to actions for trademark infringement; Judge Tuttle authors an opinion dealing with antitrust defenses to collection suits for goods and services sold. *Response of Carolina* interprets Bruce's

Juices v. American Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947), and Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429, 3 L. Ed. 475 (1959) in contractual (account) actions much as we view *Stiftung, supra,* in trademark cases, and notes Continental Wallpaper Co. v. Lewis Voight & Sons Co., 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486 as our idea of the account suit equivalent of *Phi Delta Theta, supra.* On reasoning, we feel that *Response of Carolina* is recent and compelling authority for this Court's decision here rendered.

981, 94 S.Ct. 2382, 40 L.Ed.2d 758 (1974). There is no ground for injunctive relief if the infringement has been effectively discontinued. Fram Corporation v. Boyd, 230 F.2d 931, 934 (5th Cir. 1956).

■ In view of the foregoing, the Court thinks defendant's allegations in its eighth defense may have bearing in determining the propriety of injunctive relief. The eighth defense should not be stricken.

*The First Counterclaim.*

In its first counterclaim defendant alleges that plaintiff has violated Section 2 of the Sherman Act, 15 U.S.C. Sec. 2,[7] and has engaged in unfair competition. Defendant alleges that plaintiff is, and has for some period of time, "engaged in a massive and expensive advertising campaign directed to the general public and intended to convince members of the public that 'Coca-Cola' and 'Coke' are 'The Real Thing'. The purpose, intent and effect of such advertising campaign is and has been to persuade members of the public that any cola-flavored carbonated beverage other than Coca-Cola is inferior in quality to Coca-Cola, is not a real cola-flavored carbonated beverage, is harmful to the consumer in some unexplained manner, and should not be purchased, all of which is entirely untrue." Plaintiff further asserts, "Plaintiff has engaged in the conduct above described, and continues to do so, in an attempt to monopolize interstate commerce in cola-flavored carbonated beverages, in violation of section 2 of the Sherman Act, 15 U.S.C. 2. Such conduct of the plaintiff also constitutes unfair competition with the defendant." Defendant prays that plaintiff be permanently enjoined from representing to the public that either "Coca-Cola" or "Coke" is "The Real Thing" plus treble damages. Plaintiff has moved the Court for dismissal of the counterclaim on the ground that no claim is stated.

Plaintiff contends defendant has not properly alleged the elements constituting an "attempted monopolization" claim under section 2 of the Sherman Act. Plaintiff argues the allegations are insufficient in that: (1) there is not alleged a relevant geographic market; (2) there is not alleged a specific intent to monopolize; (3) there is no allegation that there is a dangerous probability of monopolization; (4) there is no allegation of injury to the public; and (5) there is no specific allegation of damage to defendant resulting from the alleged violation of the antitrust laws.

■ That defendant's counterclaim is based on the antitrust laws [8] does not mean that a different standard applies than the usual one on a motion to dismiss. Brett v. First Federal Savings & Loan Association, 461 F.2d 1155, 1157 (5th Cir. 1972). Assuming the allegations are true, the Court must determine if defendant has alleged a set of facts which, if proven, would entitle it to relief.

Because the Court thinks other issues are more clearly dispositive, the Court assumes, without so deciding, that defendant has alleged a sufficient geographic market and intent to monopolize. The discussion will begin with consideration of whether there must be alleged a dangerous probability of monopoly, and if so, whether or not there is such an allegation.

7. The statute provides:
"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding fifty thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

8. The counterclaim alleges both an antitrust violation and a claim of unfair competition. In its brief defendant has stated the unfair competition claim is based on the common law. Plaintiff directs its motion only at the antitrust aspects of the counterclaim.

Section 2 of the Sherman Act is directed against the dangerous probability of monopolization as well as against monopolization. Lorain Journal Co. v. United States, 342 U.S. 143, 153, 72 S.Ct. 181, 96 L.Ed. 162 (1951). A necessary ingredient of an attempt to monopolize case is establishing that there is a dangerous probability the defendant will achieve monopoly power. Panotex Pipe Line Co. v. Phillips Petroleum Co., 457 F.2d 1279, 1288 (5th Cir. 1972); Cliff Food Stores, Inc. v. Kroger, Inc., 417 F.2d 203, 207 (5th Cir. 1969); Keco Industries, Inc. v. Borg-Warner Corporation, 334 F.Supp. 1240, 1245 (M.D.Pa.1971); H. F. & S. Company v. American Standard, Inc., 336 F.Supp. 110, 124 (D.Kan.1972). The reasonableness of this requirement is founded in common sense. If there is no reasonable probability that a defendant will achieve monopoly power, his attempts to do are of no real consequence since the adverse effects coming from monopoly, the evil which Congress intended to regulate, could not arise. In the broadest sense, *all* advertisements that the purveyors of goods or services offer superior goods or services could be classified as "attempts to monopolize." But most serve only to maintain the supplier's competitive position and, alas, create no monopoly, whether yearned for or not.

When defendant Howard Johnson's counterclaim is viewed with the foregoing principles in mind, it becomes apparent that the claim lacks an essential element. Nowhere is the counterclaim does defendant make any mention that plaintiff Coca-Cola is on the verge of achieving monopoly in the cola-flavored carbonated beverage industry. Defendant does charge plaintiff Coca-Cola with conducting an expensive advertising campaign, the *purpose* of which is to obtain a monopoly. But efforts to obtain monopoly do not run afoul of section 2 unless there's a "dangerous probability" of success.

There is a second reason why defendant's counterclaim cannot stand. In Kinnear-Weed Corp. v. Humble Oil & Refining Co., 214 F.2d 891, 893–894 (5th Cir. 1954), cert. denied, 348 U.S. 912, 75 S.Ct. 292, 99 L.Ed. 715 (1955), the Fifth Circuit said:

"Public injury alone justifying the threefold increase in damages and being an indispensable constituent of a claim for violation of the antitrust laws, a general allegation of such injury is not sufficient. It is essential that the complaint allege facts from which it can be determined that the conduct charged to be in violation of the antitrust laws was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce." (citations omitted)

Inspection of defendant's counterclaim compels the conclusion that the standard of *Kinnear-Weed* is not met. Defendant has alleged that Coca-Cola, as part of its attempt to monopolize, is conducting an advertising campaign in an effort to convince the public that any cola-flavored beverage other than Coca-Cola's is inferior. Defendant leaves to conjecture how public injury arises. Defendant's pleading provides only the bare bones. The flesh—how public injury flows from the conduct—is lacking.

Finally, there is a third reason to dismiss defendant Howard Johnson's counterclaim based on an alleged violation of section 2 of the Sherman Act. In order to state an attempt to monopolize claim, the complaining party must specify in his pleading the impact of the wrongdoer's misconduct on him. Alberto-Culver Company v. Andrea Dumon, Inc., 466 F.2d 705, 711 (7th Cir. 1972); Sam S. Goldstein Industries, Inc. v. General Electric Co., 264 F.Supp. 403, 407 (S.D.N.Y.1967). In this case defendant Howard Johnson makes only a conclusory allegation that plaintiff Coca-Cola's conduct has caused injury to defendant Howard Johnson's business and property. Such allegation will not suffice.

In conclusion, the Court

(1) denies plaintiff's motion to strike defenses two, three and eight.

(2) grants plaintiff's motion to strike defenses five, six, and seven; and

(3) grants plaintiff's motion to dismiss defendant's first counterclaim insofar as it is predicated upon a violation of the antitrust laws.

It is so ordered.