ALBERT H. CAYNE EQUIPMENT
CORP., Plaintiff,

v.

UNION ASBESTOS & RUBBER CO., Inc.
and Pallet Sales Company, Inc.,
Defendants.

United States District Court
S. D. New York.

Aug. 23, 1963.

Garvar & Hauser, Brooklyn, N. Y., for plaintiff (Noel W. Hauser, Brooklyn, N. Y., of counsel).

Rosenman, Colin, Kaye, Petschek & Freund, New York City, for defendant Union Asbestos & Rubber Co. Inc. (Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Chicago, Ill., of counsel).

Newman, Blue, Rich, Krinsly & Katz, New York City, for defendant Pallet Sales Company Inc. (Norton I. Katz and S. Sidney Mandel, New York City, of counsel).

MacMAHON, District Judge.

These are motions by plaintiff, an ousted distributor, for a preliminary injunction restraining Pallet Sales Company Inc. (Pallet), the new distributor, from soliciting plaintiff's customers, and by Pallet to dismiss the complaint for failure to state a claim and lack of jurisdiction. Jurisdiction is invoked solely under the antitrust laws (15 U.S.C. §§ 1–7, 13, 13a, 15 and 26), and there is no claim of diversity.[1] Decision of the motions, therefore, turns not on whether the complaint states a claim for relief under any conceivable theory, but on the

---

1. Defendant Union Asbestos & Rubber Co. Inc. is an Illinois corporation, but both plaintiff and defendant Pallet are New York corporations.

narrower question of whether it states facts constituting violations of the antitrust laws, specifically, 15 U.S.C. §§ 1–7, 13 and 13a.

In essence, the complaint alleges that for many years plaintiff was the exclusive distributor in the Metropolitan area of industrial steel shelving known as Sturdi-Bilt racks, manufactured by defendant Union Asbestos & Rubber Co. Inc. (UNARCO). The distributorship was one at will. Nevertheless, it became a property right of great value because plaintiff spent substantial sums for promotion and advertising, created hundreds of new customers, built good will and generated re-orders for Sturdi-Bilt racks. Despite plaintiff's success, UNARCO violated the antitrust laws by terminating plaintiff's distributorship in reprisal for plaintiff's refusal to purchase "other products" sold by UNARCO and pay discriminatory prices for Sturdi-Bilt racks.[2] UNARCO then gave the distributorship and a list of plaintiff's customers to defendant Pallet, who threatens to solicit them in violation of plaintiff's property rights.

Defendants contend that, assuming the truth of the facts pleaded, all the complaint alleges is a simple, independent refusal by a single seller, UNARCO, to deal with a single customer, plaintiff. Relying on United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919), they assert that, absent a combination, conspiracy or monopoly, a seller has an unqualified right to select his customers and may refuse to deal for any or no reason without offending the antitrust laws. Specifically, they argue that the Colgate rule has been repeatedly applied to uphold a seller's independent refusal to continue to deal with an exclusive distributor whose policies are not to the seller's liking. See, e. g., Packard Motor Car Co. v. Webster Motor Car Co., 100 U.S.App.D.C. 161, 243 F.2d 418 (D.C.Cir.), cert. denied, 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 38 (1957); Schwing Motor Co. v. Hudson Sales Corp., 138 F.Supp. 899 (D.Md.), aff'd on opinion below, 239 F.2d 176 (4th Cir. 1956), cert. denied, 355 U.S. 823, 78 S. Ct. 30, 2 L.Ed.2d 38 (1957); Hudson Sales Corp. v. Waldrip, 211 F.2d 268 (5th Cir.), cert. denied, 348 U.S. 821, 75 S.Ct. 34, 99 L.Ed. 648 (1954); Fargo Glass & Paint Co. v. Globe American Corp., 201 F.2d 534 (7th Cir.), cert. denied, 345 U.S. 942, 73 S.Ct. 833, 97 L.Ed. 1368 (1953); Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911 (5th Cir. 1952), cert. denied, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953); Green v. Victor Talking Machine Co., 24 F.2d 378, 382, 59 A.L.R. 1091 (2 Cir.), cert. denied, 278 U.S. 602, 49 S.Ct. 9, 73 L.Ed. 530 (1928).

██ It is true that the complaint does not allege a combination or conspiracy nor any facts from which one could be implied. Nevertheless, it does allege more than a simple, unilateral refusal to deal. It alleges an offer to enter into a bi-lateral contract on condition

---

2. The key allegations are:

   "*NINTH:* That the defendant UNARCO has purported to act in terminating the exclusive distributorship of the plaintiff in reprisal for the following: (a) Defendant UNARCO has demanded of the plaintiff as a condition to the continuation of its exclusive distributorship for Sturdi-Bilt racks that plaintiff carry and sell numerous other products manufactured by the defendant UNARCO, which plaintiff has refused to do; (b) the defendant UNARCO has demanded of the plaintiff as a condition to the continuation of its exclusive distributorship of Sturdi-Bilt racks that plaintiff purchase Sturdi-Bilt racks from the defendant at prices in access [sic] of prices asked and received by the defendant UNARCO from other customers and distributors. That plaintiff has on occasion paid the prices so demanded by the defendant UNARCO but advised the defendant UNARCO that it would not in the future pay prices which were higher than defendant was quoting for Sturdi-Bilt racks to other users.

   "*TENTH:* That the acts and conduct of the defendant UNARCO in purporting to terminate the exclusive distributorship of the plaintiff was and is in violation of [15] U.S.C. 1–7, 13 and 13A."

that the offeree bow to terms claimed to be illegal under the antitrust laws. The proscriptions of the Sherman Act are leveled, not alone at combinations and conspiracies, but at "[e]very contract * * * in restraint of trade" (15 U.S.C. § 1) and every monopolization or attempt to monopolize "any part of the trade or commerce among the several States" (15 U.S.C. § 2). United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 553, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). A contract between a seller and a buyer, therefore, is enough to satisfy the joint conduct requirement of Section 1 of the Sherman Act.

■ We think it plain, therefore, that if the conditions proposed here run afoul the antitrust laws, the complaint must be sustained. The Colgate remnant may sanction simple refusals to deal (see House of Materials, Inc. v. Simplicity Pattern Co., 298 F.2d 867 (2 Cir. 1962)), but refusals to continue to deal unless the buyer join with the seller in a contract violative of the antitrust laws are clearly illegal, United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960), and this is true without the existence of other combination or conspiracy. United States v. Loew's Inc., 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962). See Refusals to Deal with Antitrust Suitors: "Doric Simplicity" or "Dirty Pool"?, 39 U.Det. L.J. 414 (1962); A Simple Refusal to Deal, 71 Yale L.J. 1565 (1962); Halper, Individual Refusals to Deal: Customer Selection or Dealer Protection?, 22 A.B. A. Antitrust Section 49.

The question here, under the Sherman Act, is thus reduced to whether this proposed tie-in-sale violates the antitrust laws, specifically, 15 U.S.C. §§ 1–7.[3] We hold that it does not.

■■ The Sherman Act does not prohibit all contracts which restrain trade but only those which unreasonably restrain competition. Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). Certain agreements are conclusively presumed to be unreasonable restraints or per se violations of the Sherman Act, and the Supreme Court has said that tying arrangements are in that category, Northern Pac. R. Co. v. United States, 356 U.S. 1, 6, 78 S.Ct. 514, 518, 2 L. Ed.2d 545 (1958), but added that:

"* * * They are unreasonable in and of themselves whenever a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product and a 'not insubstantial' amount of interstate commerce is affected. * * *

More recently, we are taught in United States v. Loew's Inc., supra, 371 U.S. at 45, 83 S.Ct. at 102, that:

"* * * The standard of illegality is that the seller must have 'sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product * * *.' Northern Pacific R. Co. v. United States, 356 U.S. 1, 6, 78 S.Ct. 514, 2 L.Ed.2d 545. Market dominance— some power to control price and to exclude competition—is by no means the only test of whether the seller has the requisite economic power. Even absent a showing of market dominance, the crucial economic power may be inferred from the tying product's desirability to consumers or from uniqueness in its attributes."

The most recent pronouncement of the Supreme Court on the subject in White Motor Co. v. United States, 372 U.S. 253, 262, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963), is that:

"* * * Tying arrangements or agreements by a party 'to sell one

---

3. The complaint does not claim a violation of Section 3 of the Clayton Act, 15 U.S.C. § 14. We express no opinion, therefore, with respect to the applicability of that section, and we exclude that section from the phrase "antitrust laws" whenever it is used in this opinion.

product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier' * * * may fall in that category [per se violations], though not necessarily so."

Thus it seems that, despite earlier statements that tying arrangements are illegal per se, they are "not necessarily so." We conclude, therefore, that tying arrangements are not per se violations of Section 1 of the Sherman Act. They become violations of Section 1 if (1) the seller has sufficient economic power with respect to the tying product, such as monopoly, market dominance, patent, copyright, unique attributes, distinctiveness or consumer appeal, to exert economic leverage to induce his customer to take the tied product along with the tying item, and (2) a substantial volume of commerce in the tied product is restrained. United States v. Loew's Inc., supra; Northern Pac. R. Co. v. United States, supra; Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); International Salt Co. v. United States, 332 U.S. 392, 396, 68 S.Ct. 12, 92 L.Ed. 20 (1947). See also Turner, The Validity of Tying Arrangements Under the Antitrust Laws, 72 Harv.L.Rev. 50 (1958); Antitrust—Tying Agreements —Block Booking of Motion Pictures for Television, N.Y.L.F. (March 1963), Vol. IX, No. 1, p. 85; Stedman, Tying Arrangements, 22 A.B.A. Antitrust Section 64.

■ Both of the foregoing conditions are essential before a tying arrangement offends Section 1 of the Sherman Act. The instant complaint, however, fails to state any facts showing either UNARCO's economic power over Sturdi-Bilt racks—the tying product—or restraint of a substantial volume of commerce in the unidentified tied items. Indeed, there is nothing in the complaint which even suggests any effect whatever of the tying arrangement on commerce or competition, or its economic impact on the market for the tied items. The complaint, therefore, fails to allege a claim for relief under Section 1 of the Sherman Act.

■ A seller may also go beyond a mere refusal to deal and violate Section 2 of the Sherman Act if the refusal is in furtherance of a monopoly or an attempt to monopolize "any part of the trade or commerce among the several States * * *." 15 U.S.C. § 2. The right to refuse to deal is not absolute but qualified. "Its exercise as a purposeful means of monopolizing interstate commerce is prohibited by the Sherman Act." Lorain Journal Co. v. United States, 342 U.S. 143, 155, 72 S.Ct. 181, 96 L.Ed. 162 (1951).

■ Monopoly power is the power to control prices or exclude competition. United States v. Du Pont de Nemours & Co., 351 U.S. 377, 391, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). There is nothing in this complaint, however, to show that UNARCO has power to control prices or unreasonably restrict competition in the competitive market for any of the products involved. Indeed, there are no allegations respecting the relevant market at all, much less facts showing that UNARCO has a monopoly, or is reaching out to acquire one, in either the market for industrial steel shelving or the unidentified tied items. True, a tying arrangement may force a buyer to forego the purchase of substitutes for the tied product and foreclose competing suppliers pro tanto from the consuming market. United States v. Loew's Inc., supra. A tying arrangement may thus restrict competition in the market for the tied product, but it does not necessarily follow that the seller imposing the tying arrangement gains an illegal monopoly or unreasonably suppresses competition, and clearly not in the absence of a "dominant position in one market to expand his empire into the next." Times-Picayune Publishing Co. v. United States, supra, 345 at 611, 73 S.Ct. at 882. As we have shown under our discussion of Section 1 of the Sherman Act, the essence of illegality in tying arrangements is the wield-

ing of economic leverage to restrain a not insubstantial volume of commerce in the tied products. A violation of Section 2 surely requires a showing of at least as much.

■ The complaint fares no better under the Robinson-Patman Act, 15 U.S.C. §§ 13 and 13a. Discriminatory prices under the Robinson-Patman Act are illegal under Section 2(a), 15 U.S.C. § 13, only "where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them * * *." Price discrimination is thus only one element of the statutory prohibition and not per se illegal or unfair. Federal Trade Comm'n v. Simplicity Pattern Co., 360 U.S. 55, 64, 79 S.Ct. 1005, 3 L.Ed.2d 1079 (1959); United States v. Sugar Institute, Inc., 15 F.Supp. 817 S.D.N.Y.1934, modified on other grounds, 297 U.S. 553, 56 S.Ct. 629, 80 L.Ed. 859 (1936); Enterprise Industries, Inc. v. Texas Co., 136 F.Supp. 420 (D.Conn. 1955), rev'd on other grounds, 240 F.2d 457 (2 Cir.), cert. denied, 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914 (1957); Rowe, Price Discrimination Under the Robinson-Patman Act, p. 109, § 5.6.

■ This complaint is deficient in that it utterly fails to allege facts showing that the effect of the alleged discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce. Indeed, there are no allegations whatever concerning commerce much less the impact of this transaction on competition. The complaint is therefore inadequate under 15 U.S.C. § 13.

■ The complaint is also inadequate under 15 U.S.C. § 13a, for apart from its other manifest deficiencies, "a private cause of action does not lie for practices forbidden only by § 3 of the Robinson-Patman Act." (15 U.S.C. § 13a). Nashville Milk Co. v. Carnation Co., 355 U.S. 373, 382, 78 S.Ct. 352, 2 L.Ed.2d 340 (1958).

■ In addition to the foregoing deficiencies, there are other reasons why the complaint is inadequate as to Pallet. There is no allegation that Pallet combined, conspired or engaged in any joint action with UNARCO, or that it monopolized any part of trade or commerce. Nor that it in any way violated the Robinson-Patman Act. Insofar as the complaint attempts to assert a separate violation by Pallet of some property right plaintiff may have in its customers' identity, that claim is not independently cognizable under the antitrust laws. The complaint therefore fails to assert an independent federal claim as to Pallet.

■ Nor can plaintiff avail itself of pendant jurisdiction as to its separate, distinct and nonfederal claim under the doctrine of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), because it rests upon different facts and proof from the antitrust claims sought to be asserted. Nor is there jurisdiction of that claim under 15 U.S.C. § 5 empowering the court to bring in additional parties to serve the ends of justice because, in the first place, Section 5 is expressly limited to suits by the government, Georgia v. Pennsylvania R. Co., 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051 (1945), and, in the second, the complaint fails to allege a claim against UNARCO or Pallet under the antitrust laws so as to bring it within the jurisdiction invoked under 15 U.S.C. §§ 25 and 26.

We are mindful that the Federal Rules of Civil Procedure only require a complaint to give fair notice of what the plaintiff claims. Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This shallow, shotgun, conclusory pleading gives notice of what the plaintiff claims, but the claim it purports to state fails to pass muster under the specific sections of the antitrust laws which plaintiff invokes. Plaintiff may, however, be able to plead the missing facts in an amended complaint, if it is so advised.

Accordingly, the complaint is dismissed as to both defendants for failure to state a federal claim cognizable either under the specific sections of the antitrust laws which plaintiff invokes, or otherwise, and consequent lack of jurisdiction of this court over the subject matter. Leave to file an amended complaint within twenty (20) days is granted. The motion for a preliminary injunction is also denied for lack of jurisdiction.

So ordered.