**YOUR CONSTRUCTION CENTER, INC., et al., Plaintiffs,**

v.

**DOMINION MORTGAGE & REALTY TRUST (DOMINION), not an entity but a name embodied by "Trustee" Gordon R. Gross, et al., Defendants.**

No. 74–1564–Civ–JLK.

United States District Court,
S. D. Florida,
Miami Division.

Oct. 22, 1975.

As Amended Oct. 31, 1975.

Edward J. McCormick, Miami, Fla., for plaintiffs.

Karl V. Hart, William J. Gallwey, III, Shutts & Bowen, Miami, Fla., for defendants.

JAMES LAWRENCE KING, District Judge.

This matter came on to be heard at the Pre-Trial Conference ordered by this Court on August 26, 1975, and it appeared that additional time was needed to explore the issues thoroughly and consider argument on Defendants' Motion for Summary Judgment. The Court continued the conference until September 16, 1975, when extensive argument was heard for the purpose of narrowing the issues of this litigation and on Defendants' Motion for Summary Judgment.

## I. UNDISPUTED FACTS

Having heard argument of counsel, having read the numerous memoranda filed herein and having reviewed the other filings in this matter, this Court finds the following to be undisputed facts:

A. As to the Defendants:

1. DOMINION MORTGAGE & REALTY TRUST is a Massachusetts Business Trust with its principal place of business in the State of New York and has no offices or agents in the State of Florida;

2. GREAT LAKES ADVISORY SERVICE, INC., is a New York corporation, with its principal place of business in the State of New York and has no offices or agents in the State of Florida;

3. The individual Defendants are all residents and citizens of the State of New York.

B. As to Plaintiffs:

1. All individual Plaintiffs are residents and citizens of the State of Florida;

2. All corporate Plaintiffs are incorporated in and have their principal place of business in the State of Florida.

C. Regarding the particular facts surrounding the transaction giving rise to this cause of action:

1. The loan made herein was applied for by certain Plaintiffs in the State of New York and Plaintiffs' proposal and the loan approval were in New York;

2. All pertinent negotiations were carried on with Defendants in the State of New York;

3. The loan was closed in the State of New York;

4. All documents, with one exception, including the Mortgage, Mortgage Note and Construction Loan Agreement were executed in New York;

5. One Guaranty Agreement, that of HELEN COHEN, was apparently executed in Florida but was signed by her husband, HARRY COHEN, in New York and was delivered in the State of New York;

6. The Mortgage Note specifically provided for the application of the laws of the State of New York;

7. The place of performance was in the State of New York in that Plaintiffs submitted their draw requests to Defendants therein, said requests were funded to a bank account there, and the loan was to be repaid there;

8. The security for the loan made by Defendants to Plaintiffs was property located in the State of Florida;

9. The Mortgage, executed in the State of New York, was recorded in the State of Florida.

D. Defendants funded approximately 95% of the total loan commitment, Defendants paying the Plaintiffs $1,183,-000.00 out of the $1,275,000.00 commitment.

E. Defendants failed and refused to fund the draw request on June 14, 1974, yet the uncontradicted record discloses that the following reasons formed the basis of Defendants' actions:

1. The Plaintiffs had failed to make payments of interest due after the Interest Reserve Account, established under the Construction Loan Agreement, had been dissipated;

2. Plaintiffs allowed numerous liens to be filed against the property, in violation of the Construction Loan Agreement;

3. The individual items of the June 14, 1974, draw request exceeded the amounts allocated to said items.

F. Plaintiffs apparently never requested the remaining amount of the loan commitment to which they were entitled if the prerequisite construction had been completed.

G. Defendant DOMINION MORTGAGE & REALTY TRUST had, previous to the filing of this action, commenced a mortgage foreclosure action on the property involved in the Circuit Court of Palm Beach County, Florida.

Defendants moved for Summary Judgment as to all issues of the Complaint. At the Pre-Trial Conference, this Court heard extensive argument on Defendant's Motion for Summary Judgment and has reviewed the extensive interrogatories filed by Defendants, reflecting on each of the numerous allegations in the Complaint. This Court finds that no issue as to any material fact exists, and that Defendants are entitled to Summary Judgment as to all issues with the exception of Plaintiffs' claim of slander which is dismissed without prejudice.

## II. JURISDICTION

In regards to the antitrust claims, jurisdiction lies in this Court by virtue of 15 U.S.C. §§ 4, 9, and 15. In regards to the claims under the agreements between the parties, jurirsdiction lies in this Court by virtue of 28 U.S.C. § 1332 in that there is diversity between all Plaintiffs and all Defendants and the amount in controversy exceeds the sum of $10,000.00, exclusive of interest and costs. The Court assumed pendent jurisdiction as to the remaining tort claims.

## III. ISSUES PRESENTED

A. This Court must decide initially whether the law of the State of Florida or of the State of New York will apply to this transaction. Having re-

viewed the significant contacts involved in this transaction [1] and giving recognition to the fact that the parties had agreed in advance that New York law applies, this Court concludes that this transaction is to be governed by the law of the State of New York [2]: *Barzda v. Quality Court Motel*, 386 F.2d 417 (5th Cir. 1967). This determination disposes of the two key issues in this suit. First, as regards Chapter 609 of the Florida Statutes as to whether Defendant DOMINION MORTGAGE & REALTY TRUST is required to register with the Florida Secretary of State, as a business trust [3], this Court finds that DOMINION MORTGAGE & REALTY TRUST has not engaged in activities sufficient to render it amenable to the filing requirements of Chapter 609.[4] Second, regarding the allegation that the loan made to Plaintiff was usurious un-

1. The Court would specifically note that the only contact this transaction has with the State of Florida is that the property securing the loan is located here. Even if this contact is regarded as significant, it is overwhelmed by the numerous contacts with the State of New York set forth earlier in this opinion. The Court notes further the case of *Borderland Coal Sales Co. v. Walker*, 208 Ky. 146, 270 S.W. 717 (Ky.1925) where the Court held that the collecting of a debt or the taking of a mortgage to secure a debt does not constitute doing business. See also *Uible v. Landstreet*, 392 F.2d 467 (5th Cir. 1968). Plaintiffs have contended that the fact one of the guaranty agreements was signed in Florida is of significance. This Court finds that the significant factor is the place of delivery of said agreement and not where signed. See 38 Am.Jur.2d *Guaranty*, § 50.

2. This Court takes note of the recent decision of the Florida Fourth District Court of Appeal in *Your Construction Center, Inc., et al. v. Gross, not individually, but as Trustee of Dominion Mortgage & Realty Trust*, 316 So.2d 596 (4 Fla.App.1975) and the extended discussion by both sides as to whether the decision invokes the doctrine of res judicata or collateral estoppel. Though this Court is swayed by Defendants' argument as to the applicability of that case to this one, this Court finds it unnecessary to decide whether the decision controls the case here and does not rely on that decision in reaching the conclusion that the law of the State of New York is controlling.

3. The following sections of Chapter 609 are relevant:
§ 609.01 *Common law declaration of trust.* Two or more persons, whether residents of this state or not, may organize and associate themselves together for the purpose of transacting business in this state under what is commonly designated or known as a "declaration of trust;" provided, however, no such association shall ever be permitted or authorized to transact a banking or security business, of any kind, in this state.
§ 609.02 *Filing a declaration of trust.* Every such organization organized for the purpose of transacting business in this state, or organized in this state for the purpose of transacting business elsewhere, which intends to sell or offer for sale any units, shares, contracts, notes, bonds, mortgages, oil or mineral leases or other security of such associations shall, prior to transacting any such business, file with the department of state a true and correct copy of the "declaration of trust" under which the association proposes to conduct its business, which copy shall be sworn to, as being a true and correct copy, by the chairman of the board of trustees named in such declaration of trust. When such copy shall have been filed with the department of state it shall constitute public notice as to the purposes and manner of the business to be engaged in by such association. The department of state, prior to the issuance of the certificate by it, shall collect from the said association a filing fee of two hundred ($200.00), which fee shall be paid by it into the general fund of the state.
§ 609.04 *Unlawful to transact business prior to compliance.* No person may transact or conduct any business, within this state, under any "declaration of trust," or like association, without first complying with the provisions and requirements of this chapter, and no person organized to do business under any such "declaration of trust," may offer for sale, barter, or exchange any unit, share, contract, note, bond, mortgage, oil or mineral lease or other security of such organization or association, without first having complied with the provisions and requirements of this chapter.

4. The Court deems it unnecessary to discuss the constitutional commerce clause questions that a contrary holding would raise. See *Allenberg Cotton Company v. Pittman*, 419 U.S. 20; 95 S.Ct. 260; 42 L.Ed.2d 195 (1974).

der Florida's usury law, we have concluded that the transaction was governed by the law of the State of New York.[5]

■ An additional and independent ground exists for concluding that the law of the State of New York applies. Assuming the decision of *Thomson v. Kyle*, 39 Fla. 582, 23 So. 12 (1897) is still viable, the Florida Supreme Court there held:

> . . . [W]e think the weight [of authorities], supported by principle, sustains the proposition that a note executed and payable in one state, though secured by a mortgage on lands in another, will be governed, as to the rate of interest it shall bear, by the laws of the former . . . 23 So. 17.

Though some doubt has been cast on the continued efficacy of the above holding[6], the decision embodied in the following language of *Atlas Subsidiaries of Florida, Inc. v. O. & O. Inc.*, 166 So. 2d 458 (Fla.App.1964) sustains this Court's conclusion regarding the applicability of the law of the State of New York:

> It is the general rule that unless otherwise provided or clearly inferred, a note executed in one place and made payable in another is governed by the law of the place at which it is payable, it being presumed that the parties' contracted with reference to the law of that place. This is a correct statement of the rule, and it is not changed by the fact that a mortgage given as

security includes land in another state, or that the maker lived and intended to use the proceeds in the latter state. It is derived from the *presumption that parties will be presumed to have contracted with reference to the law of the place where the transaction would be valid rather than with reference to the law of a place where it would be illegal and usurious*. Appellants point to the fact that the authorities are in agreement that the place where the obligation is payable must have some connection with the transaction, and insist that such connection is present in this case because Atlas Subsidiaries of Florida, Inc., a Florida corporation, had its offices in Pennsylvania and was a wholly-owned subsidiary of a Pennsylvania corporation. We do not agree with that premise. The father should not be permitted to disavow his resemblance to the child by clothing him with foreign garments. Moreover, the promissory note in suit specifically provides that it is to be construed according to the laws of Florida. (Emphasis added). 166 So.2d at 461.

■ B. Regarding the issue variously described as fraud, conspiracy to defraud or breach of contract, this Court finds that there is no competent record support for Plaintiffs' allegation that Defendant DOMINION MORTGAGE & REALTY TRUST did not have sufficient funds available to honor its commitment to Plaintiffs. The undisputed facts show that DOMINION MORT-

---

5. Art. 5–521 of the New York Statutes, under the heading of *Corporations prohibited from interposing defense of usury*, provides in part:

  "1. No corporation shall hereafter interpose the defense of usury in any action." Further it has been held that the defense of usury is not available to a corporation in an action to foreclose a mortgage. *Amato v. Oscarwald Construction Corp.*, 32 A.D.2d 548, 299 N.Y.S.2d 1021 (1969). Further, a guarantor of a corporate loan likewise cannot rely on the defense of usury. *In re Waldman's Estate*, 32 A.D.2d 780, 302 N.Y.S.2d 233 (1969) ; *Metz v. Taglieri*, 29 Misc.2d 841, 215 N.Y.S.2d 263 (1961) ; *Franklin Na-*

*tional Bank of Long Island v. Bush Prefabricated Structures, Inc.*, 219 N.Y.S.2d 281 (Sup.1961).

6. Defendants directed the Court's attention to *Fahs v. Martin*, 224 F.2d 387 (5th Cir. 1955), where the Fifth Circuit, in noting that a contract is presumed to be valid, held that under federal conflicts of law rules and that Court's conclusion of Florida's conflict rules, regarding the issue of usury, a provision in a contract, for the payment of interest, will be valid if it is permitted by the law of the place of contract, the place of performance or any other place with which the contract has any substantial connection.

GAGE & REALTY TRUST funded approximately 95% of the loan and Defendants have filed an Affidavit that it, at all times, had sufficient funds to complete funding. No Affidavits to refute the fact were filed by Plaintiffs'. Further, it appears to the Court, that Plaintiffs' claim of inability to fund is derived, in great measure, from Defendants' failure to fund the June 14, 1974, draw request. This Court, based on the undisputed facts, finds this failure to be authorized by the express language of the agreements between the parties, and, as such, it does not constitute a breach of contract [7].

■ C. Regarding the claimed violations of various sections of the anti-trust laws, neither the Complaint nor Plaintiffs' Answers to Interrogatories requesting facts to support these claims disclose any facts resembling a monopoly or any attempt to ·monopolize. The Court notes that the total loans outstanding of DOMINION MORTGAGE & REALTY TRUST throughout the world were $46,643,506.00 in 1973 and $54,372,377.00 in 1974. The record discloses that only 30% of DOMINION'S total loans are in Florida. Plaintiffs have contended that Defendants have monopolized or attempted to monopolize the housing market for all of Florida. Yet, even if the relevant geographic market were only Palm Beach County, DOMINION'S loans there would not give it the requisite monopoly power to support an anti-trust action. See *Albert H. Cayne Equipment Corp. v. Union Asbestos & Rubber Co.*, 220 F.Supp. 784 (S.D.N.Y.1963). See also *United States v. DuPont de Nemours & Co.*, 351 U.S. (1956); *American Tobacco Co. v. United States*, 328 U.S. 781, 66 S.Ct. 1125, 90 377, 76 S.Ct. 994, 100 L.Ed. 1264 L.Ed. 1575 (1946).

■ D. Regarding the claim of libel resulting from the two letters attached to the Complaint, the first letter, dated October 28, 1974, was sent by Thomas L. David, to the Plaintiff, Florida Southeast Title Insurance Agency, Inc. Plaintiffs have failed to allege either in their Complaint or Answers to Interrogatories that there was ever the requisite publication of that letter. It will not, therefore, support Plaintiffs' libel claim. *Gelhaus v. Eastern Airlines*, 194 F.2d 774 (5th Cir. 1952); 20 Fla.Jur. *Libel and Slander*, § 45. The second letter from Bruce Taylor to Hallandale Introcostal Corp., does not, as a matter of law, contain any libelous material.

■■ E. Regarding Plaintiffs' claim of slander, this Court finds that a question of fact is presented as Plaintiffs' Answers to Interrogatories allege that one or more of the representatives of Defendant DOMINION MORTGAGE & REALTY TRUST made oral statements in New York to Marine Midland Bank, a New York banking institution, regarding one of the Plaintiffs, allegedly stating that said individual was "untrustworthy". This alleged tort occurred in New York. All Defendants reside in New York. There is no contact with the State of Florida except that Plaintiffs reside in this State. When this cause came before the Court upon Defendants' Motion to Dismiss the Court retained jurisdiction of this tort claim under the doctrine of pendent jurisdiction. In view of the disposition of the primary claims herein, it is the Court's opinion that this claim should properly be litigated in the state tribunals of New York.

"It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state

---

7. Plaintiffs have alleged, in this same context, that Defendants' alleged failure to fund constituted a tortious interference with contracts existing between Plaintiffs and others. Even if Plaintiffs' theory is legally sound, a point this Court does not pass on, as the failure to fund was justified, the claim of tortious interference with· contract must fail.

claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."

\*     \*     \*     \*     \*     \*

"The question of power will ordinarily be resolved on the pleadings. But the issue of whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–727, 86 S.Ct. 1130, 1139, 16 L.Ed. 2d 218 (1966).

*See also Buckley v. New York Post Corporation*, 373 F.2d 175 (2nd Cir. 1967); *Rebozo v. Washington Post Company*, 515 F.2d 1208 (5th Cir. 1975); *Jaffe v. Dolan*, 264 F.Supp. 845 (E.D.N.Y.1967); *Kaz Mfg. Co. v. Chesebrough-Ponds Inc.*, 211 F.Supp. 815 (S.D.N.Y.1962); *Strickland v. Sellers*, 78 F.Supp. 274 (N.D.Tex.1948). The court therefore exercises its discretion to dismiss this ancillary claim without prejudice.

F. Further, based on the above undisputed facts, plaintiffs are neither entitled to injunctive relief preventing the state court foreclosure action, nor are they entitled to cancellation or return of any of the documents herein. It is, therefore

Ordered and adjudged that:

1.  Plaintiffs' claim of slander be and the same is hereby dismissed without prejudice,

2.  Defendants' motion for summary judgment is granted as to all other issues now pending in this cause of action,

3.  Counsel for defendant shall furnish to the court within five days a Final Judgment in accordance with this order, and

4.  Costs shall be taxed in accordance with Local Rule 10F.