UNIBRAND TIRE & PRODUCT CO., INC., on behalf of itself and all others similarly situated, Plaintiff,

v.

The ARMSTRONG RUBBER COMPANY, Defendant.

Civ. No. 74–500.

United States District Court, W. D. New York.

April 4, 1977.

---

Stephen R. Lamantia, Lamantia, Gelacak & Swartzbaugh, Buffalo, N. Y., for plaintiff.

Stephen H. Kelly, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y., for defendant.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Plaintiff ("Unibrand") on behalf of itself and all others similarly situated[1] commenced the present action against defendant ("Armstrong") as the result of the refusal by Armstrong to deal with Unibrand in the sale of off-the-road, industrial and farm tires. The Complaint was filed under Section 4 of the Clayton Act (15 U.S.C. § 15) to recover treble damages which Unibrand claims to have sustained by reason of alleged violations by Armstrong of Sections 1 and 2 of the Sherman Antitrust Act (15 U.S.C. §§ 1 and 2).

Armstrong has moved against the complaint for its alleged failure to state a cause of action. As to the first cause of action[2] defendant sets forth that in order to state a cause of action under Section 1 of Sherman Antitrust Act, a "contract, combination or conspiracy" must be sufficiently

1. "The class represented by plaintiff is comprised of all franchisees of the El Dorado Tire Company to whom defendant has refused to make further sales of off-the-road, industrial and farm tires pursuant to its unlawful uniform practice of tying the sale of passenger car tires to the sale of off-the-road, industrial and farm tires." Complaint, paragraph 1.

2. The complaint herein formally sets forth but one cause of action. Nevertheless, its paragraph 23 claims that defendant's conduct constitutes a contract, combination or conspiracy in violation of 15 U.S.C. § 1 and its paragraph 24 claims that defendant was attempting to monopolize the United States replacement passenger tire market in violation of 15 U.S.C. § 2. Herein, as in the parties' briefs, these claims will be separately treated and considered—respectively as the first and second causes of action.

alleged. It is contended that the complaint is deficient in this respect. In this posture, all factual allegations of the complaint must be accepted as true. *George W. Warner & Co., Inc. v. Black & Decker Mfg. Co.,* 277 F.2d 787 (2d Cir. 1960).

The complaint sets forth that Armstrong is the sixth largest manufacturer of tires in the United States and has annual tire sales in excess of $200,000,000 per year. It manufactures off-the-road, industrial, farm and passenger car tires and sells these tires in interstate commerce and is a major factor in the national markets for off-the-road, industrial and farm tires. Unibrand is a distributor and franchisee of the El Dorado Tire Company, the owner of the name "El Dorado" which is one of the private brand names of off-the-road, industrial and farm tires manufactured by Armstrong.

Prior to the commencement of this action, shortages had developed in the wholesale supply of off-the-road, industrial and farm tires and, contemporaneously, there had been a substantial oversupply of replacement passenger car tires. Armstrong, in order to capitalize on its market power or leverage resulting from such shortages, adopted a uniform business practice of conditioning the sale of off-the-road, industrial and farm tires upon the purchase of replacement passenger car tires. Armstrong threatened that failure to abide by this uniform business practice would cause the termination of the sales of off-the-road, industrial and farm tires to Unibrand and Armstrong did so terminate as to Unibrand and other members of the class represented by it. Some of Armstrong's customers, including one or more El Dorado franchisees, agreed to these demands and for a time purchased replacement passenger car tires in order to obtain off-the-road, industrial and farm tires. It is not alleged that Unibrand at any time purchased any replacement passenger car tires under Armstrong's said uniform business practice.

Unibrand brought this action October 21, 1974. To this date no application has been made for certification as a class action.

■ The sufficiency of a complaint is appraised under Fed.R.Civ.Proc. rule 8(a) which reads in pertinent part:

"A pleading which sets forth a claim for relief * * * shall contain * * (2) a short and plain statement of the claim showing that the pleader is entitled to relief * * *."

This does not require a plaintiff to set out in detail all the facts upon which he bases his claim. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Nor does the rule require a precise statement of all elements that give rise to a legal basis for recovery. The complaint must, however, contain sufficient factual allegations from which every material point necessary to sustain recovery can be drawn.

Unibrand admits that an allegation of a contract, combination or conspiracy is necessary to the pleading of a cause of action under Section 1, but contends that its factual allegations are sufficient to that end. At paragraph 23 in the complaint, its allegation of a contract, combination or conspiracy is summarized as follows:

"23. The defendant's aforesaid conduct constitutes a contract, combination or conspiracy with those tying product customers who are acceding or have acceded to its uniform demands to purchase tied products, and by nature of the defendant's acts to enforce its tie-in policy, and the defendant has therefore violated Section 1 of the Sherman Act, 15 U.S.C. sec. 1."

The specific conduct and acts thus referred to are stated as follows:

"15. In diverse ways and on numerous occasions, the defendant then communicated with the plaintiffs and other tying product customers not parties to this action, and threatened to terminate its sales to them of tying products if they would not give in to its demands and also agree to purchase tied products from it.

"16. Some of the defendant's customers including one or more of the class members acceded to the demands and for a time entered into agreements to purchase

quantities of the tied product in order to retain their source of the tying products." Based upon these factual allegations Unibrand urges that the contract, combination or conspiracy requirement is satisfied either by the tie-in agreements which Armstrong extracted from some of its customers or by its activities in implementation of its tie-in policy.

■ Although Armstrong questions the sufficiency of Unibrand's complaint as to the allegation of illegal tying arrangements, Unibrand has sufficiently alleged that Armstrong's policy was an attempt to elicit agreements to an illegal tying arrangement. *International Salt Co. v. United States*, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947); *Coniglio v. Highwood Services, Inc.*, 495 F.2d 1286 (2d Cir. 1974), *cert. denied* 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1975). Because it is not alleged that Unibrand purchased any of the tied products, it has no direct claim for relief from the tying arrangement under Section 3 of the Clayton Act (15 U.S.C. § 14). Rather, it is limited to relief under Sherman Antitrust Act § 1 and § 2 (15 U.S.C. §§ 1 and 2).

■ Pursuant to Section 1, every contract, combination or conspiracy which unreasonably restrains interstate or foreign trade or commerce is illegal. In order to establish a violation of this section, a plaintiff must allege and prove as elements interstate or foreign commerce, two or more parties, an agreement, a restraint of trade, and the unreasonability of such restraint. In private suits for injuries, it must be alleged additionally that a plaintiff's injury arises by reason of the violation of the antitrust laws. Clayton Act § 4, 15 U.S.C. § 15.

■ The Supreme Court has recognized limitations to recovery.

"The lower courts have been virtually unanimous in concluding that Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263, 92 S.Ct. 885, 891, 31 L.Ed.2d 184 (1973).

Plaintiff must show itself to be within the sector of the economy in which the violation threatened a breakdown of competitive conditions.

■ The area of the economy threatened with a breakdown of competitive conditions because of a tying agreement is the market for the tied product, and those who will be proximately injured thereby—in addition to the party subject to the tie—are the competitors in the tied product.

Unibrand has not directly been injured by the tying arrangement. Its injury, if any, arises from Armstrong's refusal to deal with Unibrand unless the latter entered into the tying arrangement.

■ Armstrong's activity may fall within the ever decreasing scope of the holding in *United States v. Colgate & Co.*, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919), which finds no violation of antitrust laws where there has been a *unilateral* refusal to deal. Although the holding in *Colgate* has been often criticized and has been eroded almost to extinction, it is still true that a mere refusal to deal, *without more*, is not a Sherman Act violation. *G.A.F. Corporation v. Circle Floor Co.*, 329 F.Supp. 823 (S.D.N.Y.), aff'd, 462 F.2d 752 (2d Cir. 1971), *cert. dismissed*, 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973); *House of Materials, Inc. v. Simplicity Pattern Co.*, 298 F.2d 867 (2d Cir. 1962). This "without more" qualification has been applied ever more strictly with each subsequent case to the point where the *Colgate* doctrine is of questionable viability.

■ Nevertheless, while unilateral refusals to deal per se are legally protected, an examination of them in their respective market contexts in light of the broader business policies of which they are part may find them to be in violation of the antitrust laws. In *Lorain Journal Co. v. United States*, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951), a unilateral refusal to deal for the purpose of creating or maintaining a monopoly was held to violate Section 2 of the Sherman Antitrust Act. In other in-

stances findings of concerted activity have resulted in apparent unilateral refusals to deal being construed as furnishing the necessary element of a contract, conspiracy or combination under Sherman § 1. *Albrecht v. Herald Co.*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968), *rev'g* 367 F.2d 517 (8th Cir. 1966); *United States v. Parke, Davis & Co.*, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960).

A paradox would exist if a supplier is permitted to cut-off a customer after an unsuccessful and coercive attempt to extract an agreement violative of antitrust laws but is not allowed to refuse to continue to deal with an initially acquiescing customer who later reneges. *See, Quinn v. Mobil Oil Co.*, 375 F.2d 273 (1st Cir. 1967). Tolerance of such a paradox would defeat the policy of the antitrust laws. *Sahm v. V–1 Oil Co.*, 402 F.2d 69 (10th Cir. 1968) (citing *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968)).

The factual differences between the instant action and *Albert H. Cayne Equip. Corp. v. Union Asbestos & Rubber Co.*, 220 F.Supp. 784 (S.D.N.Y.1963), are not sufficient to warrant differing results on the question of the sufficiency of allegations of joint conduct under Section 1 of the Sherman Act. In *Albert H. Cayne Equip. Corp.*, a distributorship at will was terminated when the distributor refused to purchase "other products" or pay discriminatory prices for certain exclusive products as a condition for the continuation of the distributorship. The distributor on occasion did pay the discriminatory prices but never handled the other products. In response to the defendants' assertion therein that joint conduct was not alleged, the court held:

"It is true that the complaint does not allege a combination or conspiracy nor any facts from which one could be implied. Nevertheless, it does allege more than a simple, unilateral refusal to deal. It alleges an offer to enter into a bi-lateral contract on condition that the offeree

bow to terms claimed to be illegal under the antitrust laws. The proscriptions of the Sherman Act are leveled, not alone at combinations and conspiracies, but at '[e]very contract * * * in restraint of trade' (15 U.S.C. § 1) and every monopolization or attempt to monopolize 'any part of the trade or commerce among the several States' (15 U.S.C. § 2). *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533, 553, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). A contract between a seller and a buyer, therefore, is enough to satisfy the joint conduct requirement of Section 1 of the Sherman Act." *Albert H. Cayne Equip. Corp., supra*, at 786 and 787.[3]

The Supreme Court has not yet expressly passed upon the question whether a cancelled dealer has a right to relief against a supplier who refuses to deal unless the dealer enters into an anti-competitive agreement. A substantial number of lower courts have declined to view the proposed agreement as satisfying the "contract, combination or conspiracy" requirement of Sherman § 1. *See, e. g., Nelson, Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911 (5th Cir. 1952), *cert. denied* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953). While exceptions do exist, the general line of authority holds that the dealer who is cancelled when he refuses to agree to an arrangement in violation of the antitrust laws has no remedy without an executed contract or concerted activity.

As to alleging concerted activity, the instant complaint contains a paucity of specificity. Nevertheless, dismissal of a complaint before discovery has taken place or an answer filed is very drastic, even more so than a summary judgment. *Egelston v. State University College at Geneseo*, 535 F.2d 752 (2d Cir. 1976). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which warrant relief. *Conley v. Gibson, supra*. The precise na-

---

**3.** The court went on to dismiss the complaint for failure to state facts constituting violations of either Sherman Act §§ 1 and 2, or Robinson-Patman Act, 15 U.S.C. §§ 13 and 13a.

ture of the concerted activity of Armstrong and its customers will have to await some discovery. Unibrand has not been a party to the alleged agreements and cannot be expected to be able at this time to state them with precision. Therefore, as to the cause of action alleged under Section 1 of the Sherman Act, Armstrong's motion to dismiss is denied.

As to Unibrand's alleged cause of action under Section 2 of Sherman Act, even the most liberal reading of the complaint does not indicate such a cause of action. Section 2 of the Sherman Act provides that:

"Every person who shall * * * attempt to monopolize * * * any part of the trade or commerce among the several states * * * shall be deemed guilty of a misdemeanor * * *."

▆ The Supreme Court has never discussed the elements of the offense of an attempt to monopolize in any substantial detail and lower federal courts, absent needed direction, reflect considerable differences of opinion. The Second Circuit, in particular, has not taken a clear position. A specific intent to monopolize is universally accepted as a necessary element of the offense of attempted monopolization. *Times-Picayune v. United States*, 345 U.S. 594, 626, 73 S.Ct. 872, 97 L.Ed. 1277 (1953). Unibrand has alleged a specific intent to monopolize the United States replacement passenger tire market.

A question whether a "dangerous probability of success" on the part of a defendant is a necessary element of the offense of attempted monopolization has not been universally answered in the affirmative. The first significant Supreme Court discussion of an attempt to monopolize was in *Swift and Company v. United States*, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518 (1905). In upholding an injunction in that case, Mr. Justice Holmes wrote:

"Intent is * * * essential to such an attempt. Where acts are not sufficient in themselves to produce a result which the law seeks to prevent—for instance, the monopoly—but require further acts in addition to the mere forces of nature to bring that result to pass, an intent to bring it to pass is necessary in order to produce a dangerous probability that it will happen. * * * But when that intent and the consequent dangerous probability exist, [section 2] * * * directs itself against that dangerous probability as well as against the completed result." *Swift, supra*, 396, 25 S.Ct. 279.

Though that comment is ambiguous as to whether intent and "dangerous probability of success" are separate elements of the offense, or whether the "dangerous probability of success" is only the consequence to be expected from the specific intent, a number of circuit courts have interpreted *Swift* as supporting the position that "dangerous probability of success" is an essential element. *See, Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338 (3rd Cir. 1975); *George R. Whitten, Jr., Inc. v. Paddock Pool Bldrs., Inc.*, 508 F.2d 547 (1st Cir. 1974); *Agrashell, Inc. v. Hammons Products Company*, 479 F.2d 269 (8th Cir. 1973), *cert. denied* 414 U.S. 1022, 94 S.Ct. 445, 38 L.Ed.2d 313 (1973) and 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973); *Kearney & Trecker Corp. v. Giddings & Lewis, Inc.*, 452 F.2d 579 (7th Cir. 1971), *cert. denied* 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972); *Cornwell Quality Tools Co. v. C.T.S. Company*, 446 F.2d 825 (9th Cir. 1971), *cert. denied* 404 U.S. 1049, 92 S.Ct. 715, 30 L.Ed.2d 740 (1972).

▆ Unibrand places great importance on the decision of *Lessig v. Tidewater Oil Company*, 327 F.2d 459 (9th Cir. 1964), *cert. denied* (*sub nom. Tidewater Oil Co. v. Lessig*) 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046 (1964), in which "probability of actual monopolization" was specifically rejected as being an essential element of attempt to monopolize. This rejection is not convincing in view of subsequent decisions of the Ninth Circuit (see, *Cornwell Quality Tools, supra*) and an analysis of "attempt to monopolize" within the general concept of "attempt". While the Second Circuit has not taken a clear position on the elements of an attempt to monopolize, it has most recently discussed the elements of

an attempt to commit a crime. *United States v. Stallworth*, 543 F.2d 1038 (2d Cir. 1976). In citing with approval a Fifth Circuit decision, the Second Circuit stated:

"The Fifth Circuit in *United States v. Mandujano*, 499 F.2d 370 (5th Cir. 1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975), has properly derived from the writings of many distinguished jurists a two-tiered inquiry to determine whether given conduct constitutes an attempt. Initially, the defendant must have been acting with the kind of culpability otherwise required for the commission of the crime he is charged with attempting. Then, the defendant must have engaged in conduct which constitutes *a substantial step toward commission of the crime*, conduct strongly corroborative of the firmness of the defendant's criminal intent." *Stallworth, supra*, 1040. (Emphasis added.)[4]

Attempt is not proven by specific intent alone, as *Lessig, supra*, held, but also by substantial conduct. In the amorphous world of monopoly, there seldom is a precise happening, such as in a bank robbery, by which conduct may be evaluated. Therefore the doctrine of "dangerous probability of success" is the standard by which monopolistic conduct is evaluated to determine substantiality.

The definition of the relevant market is also critical in evaluating conduct. Some courts have treated the definition of the relevant market as a separate essential element. *See, Coleman Motor Co., supra*. Conceptually however, it is impossible to separate this from "dangerous probability of success". It is only by viewing the alleged conduct within the framework of a defined market that it can be determined if there is a "dangerous probability of success" resulting from that conduct. Therefore, instead of separating the two they should be combined to make "dangerous probability of success of the monopoly in a relevant market" *and* specific intent the essential elements of attempt to monopolize.

As applied to the instant complaint, Unibrand, having depended solely on *Lessig, supra*, does not dispute that its complaint does not allege any "dangerous probability of success". As indicated above, this deficiency is fatal to the stating of a cause of action under Section 2 of the Sherman Act. It is also noted that Unibrand's allegation that the relevant market is the United States replacement passenger market may prove to be overly broad since the alleged tying arrangement would not have such a general market.

For the reasons stated above, it is ordered that defendant Armstrong's motion to dismiss the Sherman § 1 claim is denied, but its motion to dismiss the cause of action under Section 2 of the Sherman Act is granted without prejudice to plaintiff Unibrand's moving to amend its complaint in order to allege facts sufficient to all essential elements. Any such amendment shall be served within twenty days following the service of this order upon Unibrand's counsel.

---

4. See also, American Law Institute's Model Penal Code § 5.01 (Proposed Official Draft 1962).